IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SME STEEL CONTRACTORS, INC., a Utah corporation, and CORE-BRACE, LLC., a Utah limited liability company,<br><br>　　　Plaintiffs,<br><br>v.<br><br>SEISMIC BRACING COMPANY, a Utah limited liability company, and ANDREW J. HINCHMAN, an individual,<br><br>　　　Defendants. | **MEMORANDUM DECISION AND ORDER CONSTRUING CLAIMS**<br><br>2:17-cv-702-RJS-EJF<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Evelyn J. Furse |

Plaintiff SME Steel Contractors, Inc., brought this patent infringement action against Defendants Seismic Bracing Company, LLC, and Andrew Hinchman.[1]  Plaintiff alleges Defendants' device infringes on Plaintiff's patent for buckling-restrained braces (BRBs).  Before considering infringement, however, the court must construe certain terms essential to understanding the scope of the relevant patent's claims.  Before the court are the parties' Cross-Motions for Claim Construction.[2]  After hearing from the parties during a *Markman* hearing, and for the reasons explained below, the court GRANTS in part and DENIES in part the parties' respective Motions.

---

[1] Although Core-Brace, LLC is also a plaintiff in this action, only SME Steel asserts a patent infringement claim. *See* Dkt. 63 (Second Am. Compl.) ¶¶ 91–98.

[2] Dkts. 76, 83.

# BACKGROUND

## I.  Patented Technology

SME owns by assignment the patent in dispute, U.S. Patent No. 7,174,680 ('680 Patent).[3] The '680 Patent is for an improved buckling-restrained brace (BRB), which is a structural brace implemented in steel frame buildings to minimize the effects of earthquakes.[4]  In its most basic form, a BRB consists of a steel core that runs through a concrete-filled bracing element.[5]  A BRB is displayed below in Figure A.[6]

**Figure A**



---

[3] *See generally* Dkt. 63 ¶ 13.

[4] *See generally* Dkt. 79 (Joint Appendix), Appx. 010 at 1:32–36; 1:18–31.  Hereinafter, all citations to "Appx." refer to the Joint Appendix at Dkt. 79.

[5] *Id.* at 1:36–39.

[6] Figure A is reproduced from Figure 1 of the '680 Patent.  Appx. 003.

BRBs absorb seismic forces from earthquakes that would otherwise be exerted on a structure through plastic deformation. When an earthquake occurs, the steel core running through the middle of the BRB compresses or elongates without buckling.[7] To absorb the seismic forces without destroying the BRB, the steel core must be free to move independently of the bracing element (*i.e.*, the concrete-filled outer steel frame).[8] When manufacturing a BRB, the steel core must therefore be prevented from bonding with the bracing element.[9] This separation of steel core and bracing element allows the steel core to absorb seismic energy from the ends of the BRB without conveying that energy to the bracing element.[10]

The '680 Patent's Background of the Invention section explains that prior art for BRBs teaches use of an asphaltic rubber layer to prevent bonding between the core member and the bracing element.[11] The '680 Patent identifies two problems with this method: (1) the compression and elongation of the steel core during seismic movement shears the asphaltic rubber layer, and (2) the manufacture of the BRB becomes more complex because special care must be taken to ensure the rubber layer is the correct thickness.[12]

The '680 Patent retains the same basic BRB structure but modifies how the steel core and bracing element are separated. First, a "bearing member" is coupled to the cement layer "to limit the amount of friction caused by the movement of [the] core member [] relative to . . . the

---

[7] *Id.* at 1:18–31, 41–43.

[8] *Id.* at 1:56–58.

[9] *Id.* at 1:58–61.

[10] *Id.* at 1:61–65.

[11] *Id.* at 2:1–4.

[12] *Id.* at 2:7–9, 23–30. The thickness of the rubber layer affects the performance of the BRB. *See id.*

buckling restraining assembly."[13]  Second, an "air gap" is "positioned between" the core member

and any bearing member "to prevent bonding of the core member [] to the buckling restraining

assembly []."[14]  The spatial relationship among the bearing member, core member, and air gap is

displayed below in Figure B, which shows a cross-section of a BRB.[15]

**Figure B**



## II.    Asserted Independent Claims

Plaintiff alleges Defendants' device infringes independent claims 1, 9, 18, 26, and 27.

Save for Claim 27, Claim 1 is representative of each of the asserted claims:

> . . . at least two separate *bearing members* each of which is interposed between
> the rigid layer and the core member so that one side of the *bearing member* is in
> direct contact with the rigid layer, and an opposite side of the *bearing member* is
> not in direct contact with the core member such that an *air gap* is *formed between*
> the core member and the *bearing members* . . . .[16]

---

[13] Appx. 012 at 6:22–26.

[14] *See id.* at 6:60–61; Appx. 013 at 7:8–9.

[15] Figure B is an annotated version of Figure 3 from the '680 Patent.  Appx. 005; *see also* Dkt. 78 at 6.

[16] Appx. 015–016, Claim 1 (emphasis added).

Claim 27 differs from the other four asserted independent claims by employing the phrase "positioned between" instead of "formed between":

> . . . a plurality of *bearing members* interposed between the rigid layer and the core member wherein a first *bearing member* is positioned adjacent to a core member first side and a second bearing member is positioned adjacent a core member second side, such that an *air gap* is *positioned between* the first bearing member and the core member first side and an *air gap* is *positioned between* the second bearing member and the core member second side, one side of each *bearing member* is in direct contact with the rigid layer.[17]

## III. Prosecution History

The patent examiner initially rejected Claims 1-15, 20-25, and 48-55 of the '680 Patent in light of two prior art references: Takeuchi, et al. (U.S. Patent No. 6,826,874) and Fannuci, et al. (U.S. Patent No. 6,530,182).[18] Takeuchi taught the use of a thin, membrane-like film to separate the core member and "cementious rigid layer," and Fanucci introduced placing a gap between the core member and the bearing member.[19] The examiner concluded "[i]t would have been obvious to one having ordinary skill in the art at the time of the invention to modify Takeuchi et al to show an air gap between the core and the bearing member because having an air gap between the bearing members and the core would significantly increase the failure load of the supporting structure as taught by Fanucci et al."[20]

SME advanced three arguments in response: (1) the Takeuchi patent included a single bearing, whereas the '680 Patent (as amended) included at least two separate bearings; (2) Takeuchi did not teach using an air gap, as the adhesion-preventive film served the purpose

---

[17] Appx. 017 at 15:26–16:3 (emphasis added).

[18] Appx. 105.

[19] *See* Appx. 105–106.

[20] Appx. 106.

of preventing the steel center from adhering to the cementitious layer; and (3) the film taught by Takeuchi "is not a bearing."[21]  Concerning the second point, SME explained,

> As noted by the examiner, Takeuchi fails to teach or suggest the use of an air gap between the core member and the buckling restraining assembly to prevent bonding of the assembly to one or more portions of the core member. . . . Takeuchi teaches the use of an adhesion-preventive film to serve the purpose of preventing the steel center member from adhering to the concrete.  Therefore, there is no motivation to incorporate an air gap into Takeuchi in order to accomplish the same purpose. Indeed, the use of an air gap would defeat the purpose of the adhesion-preventive film.[22]

The examiner accepted SME's arguments and issued a Notice of Allowance, reasoning that the "prior art does not show an air gap being formed between the core member and the bearing members in combination with other claimed limitations."[23]

## LEGAL STANDARD

Patent infringement analysis comprises two steps: "The first step is determining the meaning and scope of the patent claims asserted to be infringed. . . . The second step is comparing the properly construed claims to the device accused of infringing."[24]  Here, the court is concerned only with the first step: claim construction.  Construing claims is a matter of law for the court.[25]

Claim terms generally embrace their "ordinary and customary meaning, which is the meaning they would have to a person of ordinary skill in the art at the time of the invention."[26]

---

[21] Appx. 092–093.

[22] Appx. 093.

[23] Appx. 041.

[24] *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

[25] *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1344 (Fed. Cir. 2002).

[26] *Poly-America, L.P. v. API Indus., Inc.*, 839 F.3d 1131, 1136 (Fed. Cir. 2016) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005)).

The person of ordinary skill is deemed to read claim terms in view of the entire patent, including intrinsic and extrinsic evidence.[27]  Courts typically begin claim construction by considering the patent's intrinsic evidence,[28] which includes the claims themselves, the specification, and the prosecution history.[29]  The specification "is the single best guide to the meaning of a disputed term"—so much so that "[u]sually it is dispositive."[30]  Moreover, "the specification may reveal a special definition that differs from the meaning it would otherwise possess."[31]

Although less essential than the specification, the prosecution history can also inform the meaning of claim language, and the Federal Circuit has explicitly directed district courts to consider this history if it is in evidence.[32]  The prosecution history comprises the record of the proceedings before the PTO, including the prior art cited during the patent examination.[33]  Because "the prosecution history was created by the patentee in attempting to explain and obtain the patent . . . [it] can often inform the meaning of the claim language by demonstrating how the inventor understood the invention . . . ."[34]

Along with intrinsic evidence, courts also have discretion to consider extrinsic evidence.[35]  Extrinsic evidence consists of expert reports, inventor testimony, dictionaries, and

---

[27] *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005).

[28] *Id.* at 1314–15.

[29] *Id.* at 1314.

[30] *Id.* at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002)).

[31] *Id.* at 1316.

[32] *Id.* at 1317.

[33] *Id.*

[34] *Id.*

[35] *Id.* at 1319 ("In exercising that discretion, and in weighing all the evidence bearing on claim construction, the court should keep in mind the flaws inherent in each type of evidence and assess that evidence accordingly.").

learned treatises.[36]  While extrinsic evidence is generally less reliable than intrinsic evidence,

courts may consult these sources to understand the relevant scientific principles, the meaning of

technical terms, and the state of the art.[37]

## ANALYSIS

The parties initially asked the court to construe four terms: "bearing member," "air gap,"

"formed between," and "positioned between."[38]  The parties proposed the following

constructions:

| No. | Terms/Phrases | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION |
|---|---|---|---|
| 1 | Bearing member | An object, surface, or point that supports | An object, surface, or point that supports and is relatively substantial and is constructed of a durable, hard material, such as Teflon or ultra high molecular weight polyethylene |
| 2 | Air gap | An empty or unfilled space or interval | A void free of material and only having air |
| 3 | Formed between | Plain and ordinary meaning | Spans the distance between |
| 4 | Positioned between | Plain and ordinary meaning | Spans the distance between |

[36] *Id.* at 1317.

[37] *Id.* at 1318–19.

[38] *See* Dkt. 98 (Joint Status Report Regarding Claim Construction Hearing).

Prior to the *Markman* hearing, however, the court circulated its proposed constructions of the four terms at issue here. At the hearing, the parties stipulated to the court's proposed construction of "bearing member." Accordingly, the court construes bearing member to mean "an object or surface, constructed of a hard and durable material, that supports."

Defendants further stipulated during the hearing they had no objection to the court adopting Plaintiff's proposed construction of "air gap," provided the court adopted Defendants' construction of the terms "formed between" and "positioned between." Because the court adopts Defendants' construction of those two terms (discussed below), Defendants have no objection to the court accepting Plaintiff's construction of "air gap." The court therefore construes "air gap" to mean "an empty or unfilled space or interval."

All that remains for the court to resolve is construction of the terms "formed between" and "positioned between." The court turns now to those terms.[39]

## I.     "Formed Between" and "Positioned Between"

Independent claims 1, 9, 18, and 26 each generally recite that "an air gap is *formed between* the core member and the bearing members . . . ."[40] Independent Claim 27 is the only claim to employ the "positioned between" language instead of "formed between."[41]

Plaintiff ultimately advanced two theories about how the court should construe "formed between" and "positioned between." In its Motion, Plaintiff asserts the terms "formed between"

---

[39] Defendants moved to exclude the declaration of Plaintiff's expert, James Malley. Dkt. 93. Plaintiff cites to Malley's declaration to support both its claim construction and summary judgment arguments. As to Malley's statements concerning claim construction, Defendants' Motion to Exclude is denied. In any event, for many of the reasons Defendants explain in their Motion, the court found Malley's declaration largely unhelpful, and it was immaterial to the court's construction of the disputed terms. The court will revisit Defendants' Motion to Exclude in considering the parties' summary judgment motions.

[40] *See, e.g.*, Appx. 015–016 (emphasis added).

[41] *Id.* at 017.

and "positioned between" should be given their plain and ordinary meaning and require no construction.[42]  But Plaintiff argued alternatively at the *Markman* hearing that, if the court concluded it must construe the terms, it should give "positioned between" a broader construction than "formed between."  Defendants contend both terms mean "spans [the distance] between the core and the bearing member."[43]  After considering whether the terms require construction and whether the terms carry different meanings, the court adopts Defendants' proposed construction of both terms.

### A. The Court is Required to Construe "Formed Between" and "Positioned Between"

Plaintiff quotes dicta from the Federal Circuit's decision in *O2 Micro International Limited v. Beyond Innovation Technology Company Limited* for the propositions that "claim construction 'is not an obligatory exercise in redundancy,' and that district courts 'are not (and should not be) required to construe every limitation present in a patent's asserted claims.'"[44]  But Plaintiff ignores the core of *O2 Micro*'s holding.  That case holds that a district court commits reversible error where it fails to adjudicate the parties' dispute concerning the proper scope of a term and instead allows parties to submit to a jury arguments regarding the meaning and legal significance of the disputed terms.[45]  As the *O2 Micro* court explained, "[a] determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate

---

[42] *See* Dkt. 78 at 22–24.

[43] Dkt. 94 at 12.

[44] Dkt. 78 at 22 (quoting *O2 Micro*, 521 F.3d 1351, 1362 (Fed. Cir. 2008)).

[45] *O2 Micro*, 521 F.3d at 1362 (holding the district court erred by failing to resolve the parties' dispute over the meaning of "only if" and by allowing the parties to submit to the jury arguments over the term's legal significance).

when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute."[46]

Here, reliance on the terms' ordinary meanings does not resolve the parties' dispute. Indeed, despite asserting that "formed between" is "readily understandable," Plaintiff later submits the term "generally indicates that the air gap is formed *somewhere* between the bearing member and the core member."[47] This directly contradicts Defendants' proposed construction of the term that the air gap spans the entire distance between the bearing member and the core member.[48] The court's failure to construe "formed between" or "positioned between" would invite (if not require) the parties to argue to the jury the meaning and legal significance of the disputed terms: whether they mean the air gap could exist somewhere between the core member and the bearing member, or whether the air gap must span the entire distance. Because this is a question of law,[49] the court must construe the terms.

## B. "Formed Between" and "Positioned Between" Do Not Carry Distinctive Meanings

At the *Markman* hearing, Plaintiff advanced for the first time an alternative construction theory. Plaintiff argued that, if the court determined construction of the terms was necessary, each term should be construed individually because "formed between" and "positioned between" have distinct meanings. Plaintiff contended "positioned between" is broader than "formed

---

[46] *Id.* at 1361 (quoting the district court's language).

[47] Dkt. 78 at 23 (emphasis added).

[48] *See* Dkt. 94 at 15.

[49] *O2 Micro*, 521 F.3d at 1360 ("When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute.").

between" and should be construed as "anywhere between."[50] To support its argument, Plaintiff cited the doctrine of claim differentiation.

As an initial matter, it is telling Plaintiff's suggestion that "positioned between" is broader in scope than "formed between" arose for the first time only at oral argument. Indeed, the parties' briefing reveals they effectively agreed initially that "formed between" and "positioned between" carried the same meaning within the context of the '680 Patent.[51] Notwithstanding Plaintiff's claim differentiation argument was only minimally developed at the hearing, the court addresses it here.

Rooted in the legal canon of construction against superfluity, "[t]he doctrine of claim differentiation provides a presumption that differently worded claims cover different claim scope."[52] That is, courts should not adopt a construction that would cause differently worded claims to cover the same claim scope, which would render one of the claims superfluous.[53] But "[c]laim differentiation is a guide, not a rigid rule."[54] Nor "does [claim differentiation] allow

---

[50] Although arguing the court need not construe the terms "formed between" or "positioned between," Plaintiff appeared to accept Defendants' construction of "formed between" as "spans the distance between" should the court determine construction is necessary. It was not clear to the court, however, whether Plaintiff's stipulation was conditioned on the court's adoption of the construction of "positioned between" Plaintiff advanced during the hearing (*i.e.*, "anywhere between"). Given this ambiguity, the court assumes for purposes of claim construction that Plaintiff did *not* withdraw its objection to Defendants' proposed construction of "formed between."

[51] *Compare* Dkt. 78 at 23 ("[F]ormed between . . . generally indicates that the air gap is formed somewhere between the bearing member and the core member.") *with id.* at 24 (describing "positioned between" to mean "the air gap is generally positioned somewhere between the bearing member and the core member"); *see also* Dkt. 89 at 23 ("[T]he term 'formed between' . . . generally indicates that the 'air gap' is formed *somewhere* between the bearing member and the core member. *Like formed between*, 'positioned between' *also* generally indicates that the air gap is positioned or located *somewhere* in the space separating the bearing members and the core member[].") (emphasis added); Dkt. 94 at 15 (noting that "formed between" is not differentiated anywhere from "positioned between").

[52] *Wi-Lan USA, Inc. v. Apple Inc.*, 830 F.3d 1374, 1391 (Fed. Cir. 2016).

[53] *See id.*

[54] *Id.* (quoting *Marine Polymer Techs., Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1359 (Fed. Cir. 2012); *see also* Chisum on Patents 18.03 [6] ("Experience has shown that claim differentiation actually serves as a guide to the construction of claims and may not be determinative in a particular case.").

unrestrained expansion of claims beyond the description of the invention in the specification, and explanations and representations made to the PTO in order to obtain allowance of the claims."[55] Indeed, "practice has long recognized that . . . two claims which read differently can cover the same subject matter."[56] "[T]hat the claims are presumed to differ in scope does not mean that *every* limitation must be distinguished from its counterpart in another claim, but only that *at least one* limitation must differ."[57] In short, different words in separate claims do not necessarily imply different scope where "there [is] no relevant difference between those words' meanings."[58]

That is the case here. While Plaintiff is undoubtedly correct that in many instances the phrases "formed between" and "positioned between" may carry different meanings, any meaningful distinction disappears in the context of the specification and the '680 Patent as a whole.[59] Nothing in the patent's specification, nor in the claims themselves, suggests the scope of any claim varies based upon the use of either phrase. Rather, both terms delineate the same spatial relation of the air gap between the bearing member and the core member. The court is confident that, if these terms materially affected any claim's scope, the parties would have raised this issue in their Cross-Motions for Claim Construction. Assessing the terms against the backdrop of the '680 Patent as a whole, the terms do not have independent meanings.

---

[55] *Tandon Corp. v. U.S. Int'l Trade Comm'n*, 831 F.2d 1017, 1028 (Fed. Cir. 1987).

[56] *Id.* at 1023 (internal quotations and citations omitted).

[57] *Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1368 (Fed. Cir. 2000) (emphasis added).

[58] *Wi-Lan*, 830 F.3d at 1392 (citing *Public Citizen, Inc. v. HHS*, 332 F.3d 654, 665 (D.C. Cir. 2003)).

[59] *See Toro Co.*, 199 F.3d at 1299 (emphasis added) ("[T]he dictionary definitions of common words are often less useful than the patent documents themselves in establishing the usage of ordinary words in connection with the claimed subject matter. . . . Determining the limits of a patent claim requires understanding its terms *in the context in which they were used by the inventor*, considered by the examiner, and understood in the field of the invention.").

## C.  The Court Adopts Defendants' Proposed Construction

Plaintiff argues that nothing in the Claims themselves, the specification, or the prosecution history supports Defendants' contention the air gap must always span the entire distance between the core and bearing members.[60]  The court disagrees.

First, in each figure included in the specification in which an air gap is depicted, the air gap spans the entire distance between the respective bearing member and the core member.[61] Although the Federal Circuit has cautioned against "reading limitations into a claim from the preferred embodiment described in the specification,"[62] courts routinely examine the relevant specification's figures and drawings in assessing a claim term's meaning.[63]  While not dispositive, the specification's consistent illustrations provide evidence that an air gap spanning the entire distance between a bearing member and the core member was fundamental to the invention's basic design.[64]

---

[60] Dkt. 89 at 24.

[61] *See* Appx. 005–008, Figs. 3, 4, 5C, and 6B.

[62] *In re Am. Acad. of Sci. Tech. Ctr.*, 367 F.3d 1359, 1369 (Fed. Cir. 2004).

[63] *See, e.g.*, *Teleflex, Inc.*, 299 F.3d at 1324 (emphasis added) ("The words used in the claims are interpreted in light of the intrinsic evidence of record, including the written description, *the drawings*, and the prosecution history, if in evidence."); *Toro Co. v. White Consol. Indus., Inc.*, 199 F.3d 1295, 1301 (Fed. Cir. 1999) (emphasis added) (noting that claim terms are "not construed in a lexicographic vacuum, but in the context of the specification *and drawings*.").  In *Toro Co.*, the court's construction relied in part on its review of the illustrations incorporated within the specification: "Nowhere in the specification, including its twenty-one drawings, is the cover shown without the restriction ring attached to it. Nor is the restriction ring shown other than attached to the cover. The specification states that the restricting ring is automatically inserted and removed by the cover to which it is attached, *and illustrates only this structure in the drawings*."  *Id.* (citations omitted) (emphasis added).

[64] *See id.*

14

Second, the specification repeatedly explains the air gap's objective is to "prevent bonding of the core member and buckling restraining assembly [*i.e.*, cementitious material]."[65] This central purpose could not be accomplished if the air gap spanned less than the entire distance between the bearing member and the core member, lest the cementitious material come into contact with the core member at one or more points.

Indeed, the prosecution history reveals Plaintiff made this very argument to the patent examiner.[66] That is, to overcome the examiner's prior rejection of Plaintiff's patent, Plaintiff explained:

> As noted by the examiner, Takeuchi fails to teach or suggest the use of an air gap between the core member and the buckling restraining assembly to prevent bonding of the assembly to one or more portions of the core member. . . . Takeuchi teaches the use of an adhesion-preventive film to serve the purpose of preventing the steel center member from adhering to the concrete. Therefore, there is no motivation to incorporate an air gap into Takeuchi in order to accomplish the same purpose. *Indeed, the use of an air gap would defeat the purpose of the adhesion-preventive film.*[67]

For the air gap to serve the distinguishing function Plaintiff describes, that gap must span from the bearing member to the core member. Were it not so, some other intervening material would then serve to separate the bearing member and core member (and thus prevent bonding), which—as Plaintiff argued to the examiner—would "defeat the purpose" of the air gap. In sum,

---

[65] *E.g.*, Appx. 010 at 1:14–15 ("An air gap is positioned between the core member and the one or more bearings of the buckling restraining apparatus to prevent bonding of the core member and buckling restraining assembly."); *id.* at 2:44–48 ("An air gap is positioned between the core member and the one or more bearings of the buckling restraining apparatus to prevent bonding between the core member and the buckling restraining assembly."); Appx. 011 at 4:5–8 ("An air gap is positioned between the core member and the one or more bearings of the buckling restraining apparatus to prevent bonding between the core member and the buckling restraining assembly."); Appx. 013 at 7:8–9 ("Air gaps [] are also adapted to prevent bonding of the core member [] to the buckling restraining assembly [].").

[66] *See Phillips*, 415 F.3d at 1317 ("Like the specification, the prosecution history provides evidence of how . . . the inventor understood the patent.").

[67] Appx. 093 (emphasis added).

because the '680 Patent's specification and prosecution history support Defendants' proposed construction, the court construes "positioned between" and "formed between" to mean "spans the distance between."

## CONCLUSION

The court GRANTS in part and DENIES in part Plaintiff's Opening Cross-Motion for Claim Construction,[68] adopting only Plaintiff's construction of "air gap." The court also GRANTS in part and DENIES in part Defendants' Opening Cross-Motion for Claim Construction,[69] adopting Defendants' construction of the terms "formed between" and "positioned between."

The parties may submit within 30 days supplemental briefs not to exceed 15 pages, explaining how the court's construction of the disputed terms affects the pending summary judgment briefing.

SO ORDERED this 24th day of March 2020.

BY THE COURT:

_____
ROBERT J. SHELBY
Chief United States District Judge

---

[68] Dkt. 76.

[69] Dkt. 83.