IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SME STEEL CONTRACTORS, INC., a Utah corporation, and CORE-BRACE, LLC., a Utah limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>SEISMIC BRACING COMPANY, a Utah limited liability company, and ANDREW J. HINCHMAN, an individual,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION**<br><br>2:17-cv-702-RJS-DAO<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg |

On March 24, 2020, the court issued its Memorandum Decision and Order Construing Claims in Plaintiff SME Steel Contractors, Inc.'s U.S. Patent No. 7,174,680 ('680 Patent).[1] SME now moves the court to reconsider its construction of two claim terms—"formed between" and "positioned between."[2] For the reasons explained below, the court DENIES SME's Motion for Reconsideration.

## BACKGROUND

The court assumes familiarity with its Claim Construction Order and will not repeat at length the factual and procedural background.[3] Claim 1 of the '680 Patent is representative of the claims at issue here and contains the disputed claim terms:

---

[1] Dkt. 126; *see also SME Steel Contractors, Inc. v. Seismic Bracing Co.*, No. 2:17-cv-702-RJS-EJF, 2020 WL 1434147 (D. Utah Mar. 24, 2020).

[2] Dkt. 128.

[3] *See* Dkt. 126 at 2–6.

at least two separate bearing members each of which is interposed between the rigid layer and the core member so that one side of the bearing member is in direct contact with the rigid layer, and an opposite side of the bearing member is not in direct contact with the core member such that an air gap is *formed between* [or, *positioned between*] the core member and the bearing members.[4]

At bottom, the parties' dispute is encapsulated by the following figures submitted by SME:



SME argued in its claim construction briefing that the claim terms should be construed to indicate the air gap is located *somewhere* between the core member and bearing members, meaning the '680 Patent would encompass Figure 4(b) above. Defendants maintained the specification and prosecution history make clear the air gap must span the entire distance between the core member and bearing member. After considering the claim language, the specification, and the prosecution history—in addition to the parties' written and oral arguments—the court ultimately construed both "formed between" and "positioned between" as "spans the distance between." Under this construction, the '680 Patent would not encompass the exemplary illustration in Figure 4(b). In response, SME filed its Motion to Reconsider.

---

[4] Dkt. 79 (Appx.) at 015–016 (emphasis added). Claim 27 is nearly identical but "positioned between" is used in place of "formed between." *Id.* at 017.

## LEGAL STANDARD

Although not formally recognized by the Federal Rules of Civil Procedure, motions to reconsider are generally construed under Rule 54(b), Rule 59, or Rule 60(b), depending on when the motion is filed.[5] Motions to reconsider filed prior to entry of final judgment, as here, are construed under Rule 54(b).[6] Rule 54(b) provides that "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."[7] Motions to reconsider under Rule 54(b) "invok[e] the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment."[8]

Rule 54(b) motions to reconsider should be granted only in limited circumstances, for instance "[1] when substantially different, new evidence has been introduced, [2] subsequent, contradictory controlling authority exists, or [3] the original order is clearly erroneous."[9] "Thus,

---

[5] *See Price v. Philpot*, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005) (citing Fed. R. Civ. P. 59(e), 60(b), & 54(b)).

[6] *See id.* ("[E]very order short of a final decree is subject to reopening at the discretion of the district judge.") (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) and citing Fed. R. Civ. P. 54(b)); *see also* Fed. R. Civ. P. 54(b).

[7] Fed. R. Civ. P. 54(b); *see, e.g.*, *Anderson v. Deere & Co.*, 852 F.2d 1244, 1246 (10th Cir. 1988) ("It is within the District Judge's discretion to revise his interlocutory orders prior to entry of final judgment.").

[8] *Wagoner v. Wagoner*, 938 F.2d 1120, 1122 n.1 (10th Cir. 1991).

[9] *Major v. Benton*, 647 F.2d 110, 112 (10th Cir. 1981) (affirming district court's reversal of its summary judgment order after a controlling Supreme Court decision was issued between the district court's first and second rulings); *see also Pia v. Supernova Media, Inc.*, No. 2:09-cv-840-DN-EJF, 2014 WL 7261014, at *2 (D. Utah Dec. 18, 2014) (internal quotation marks and citations omitted) ("There are three scenarios in which a litigant may successfully argue for reconsideration [under Rule 54(b)]: when (1) substantially different, new evidence has been introduced; (2) subsequent, contradictory controlling authority exists; or (3) the original order is clearly erroneous.").

a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law."[10]

## ANALYSIS

SME argues the court's Claim Construction Order is clearly erroneous for two reasons. First, SME contends the court "incorrectly imports limitations from the specification to rewrite the plain and ordinary meaning of the claim language."[11]  Second, SME asserts the court "appears to misapprehend the functional characteristics and discussed objective of the claimed BRBs [buckling restrained braces] as a matter of fact."[12]  The court addresses each argument in turn.[13]

### I.  The Court Did Not Rewrite the Plain and Ordinary Meaning of the Claim Language

#### A.  The Court Applied the Correct Legal Framework In Construing the Claim Terms "Formed Between" and "Positioned Between"

SME argues the court fundamentally erred in arriving at its construction of "formed between" and "positioned between" because it began its analysis by "div[ing] directly into the specification and prosecution history" while only "gloss[ing] over the claims themselves."[14]  Had

---

[10] *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (explaining nearly identical Rule 59(e) motion to reconsider standard).

[11] Dkt. 128 at 2.

[12] *Id.*

[13] SME also argues in a footnote that "it violates the principle of claim differentiation to construe both 'formed between' and 'positioned between' to have the same meaning." Dkt. 128 at 5 n.31.  However, SME fails to explain how the terms differ in the context of the '680 Patent and generally uses the terms interchangeably throughout its brief.  In any event, the court squarely addressed this argument in its Claim Construction Order. Dkt. 126 at 11–13. SME does not engage the court's analysis in any way nor explain why the reasoning was incorrect.  Accordingly, the court will not revisit the issue here.  *See Pia*, 2014 WL 7261014, at *2 (explaining that a motion to reconsider "must be made upon grounds other than a mere disagreement with the court's decision and must do more than rehash a party's former arguments that were rejected by the court") (internal quotation marks and citations omitted).

[14] Dkt. 128 at 2.

the court first "grapple[d] with the plain and ordinary meaning of the terms," SME contends its preferred construction of "formed between" and "positioned between" would have prevailed.[15] The court disagrees.

As an initial matter, the court followed the parties' lead in construing the relevant terms. That is, in their claim construction motions, neither party submitted dictionary definitions of the terms.[16] This was in contrast to SME's proposed construction of the claim term "air gap," for which it submitted multiple dictionary definitions.[17] Indeed, SME stated in its briefing that the terms "formed between" and "positioned between" required no construction at all.[18] Thus, the court understood from the parties' papers and oral arguments at the *Markman* hearing that resort to dictionary definitions of "formed," "positioned," and "between" would do little to resolve the parties' dispute about the scope of the claim terms in the context of the '680 Patent. As discussed below, this is in fact the case.

Regardless, the Federal Circuit has rejected the rigid, formulaic approach to claim construction SME espouses in its Motion. SME is correct that courts should "begin a claim construction analysis by considering the language of the claims themselves."[19] However, the remainder of SME's description of the claim construction process largely misstates the law. SME contends that:

---

[15] *Id.* at 5.

[16] *See* Dkt. 78 at 22–25; Dkt. 83 at 15–17.

[17] Dkt. 78 at 20.

[18] *Id.* at 22–25.

[19] *Trs. of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1363 (Fed. Cir. 2016).

> the first step in the claim construction process is for the Court to review each disputed claim term and ascertain "its plain meaning to the ordinarily skilled artisan." It is only *after* this critical step has been completed that the Court turns to "the next step" which "is to examine the written description and the drawings to confirm that the patentee's use of the disputed terms is consistent with the meaning given to it by the court."[20]

This is incorrect. SME errs by relying on caselaw decided before the Federal Circuit's seminal decision in *Phillips v. AWH Corp.*[21] "*Phillips* rejected an approach 'in which the specification should be consulted only after a determination is made, whether based on a dictionary, treatise, or other source, as to the ordinary meaning or meanings of the claim term in dispute.'"[22] Indeed, "there is no magic formula or catechism for conducting claim construction."[23] "Nor is the court barred from considering any particular sources *or required to analyze sources in any specific sequence*, as long as those sources are not used to contradict claim meaning that is unambiguous in light of the intrinsic evidence."[24] Further, because the specification "is the single best guide to the meaning of a disputed term," it "is . . . the primary basis for construing the claims."[25]

Moreover, *Phillips* cautions that "if the district court starts with the broad dictionary definition in every case and fails to fully appreciate how the specification implicitly limits that definition, the error will systematically cause the construction of the claim to be unduly expansive."[26] Thus, *Phillips* counsels courts to "focus[] at the outset on how the patentee used

---

[20] Dkt. 128 at 2–3 (quoting *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001)).

[21] 415 F.3d 1303 (Fed. Cir. 2005) (en banc).

[22] *Symantec Corp.*, 811 F.3d at 1363 (quoting *Phillips*, 415 F.3d at 1320); *see also Straight Path IP Group, Inc. v. Sipnet EU S.R.O.*, 806 F.3d 1356, 1361 (Fed. Cir. 2015) ("[T]he governing approach to claim construction . . . rejects a sequenced, dictionary-driven, burden-shifting approach . . . .").

[23] *Phillips*, 415 F.3d at 1324.

[24] *Id.* (emphasis added) (citation omitted).

[25] *Symantec Corp.*, 811 F.3d at 1362–63 (internal quotation marks and citations omitted).

[26] *Phillips*, 415 F.3d at 1321.

the claim term in the claims, specification, and prosecution history, *rather than starting with a broad definition and whittling it down.*"[27] This is the approach the court followed in construing "formed between" and "positioned between."[28] Accordingly, the court did not err by considering at the outset the claim terms in light of the specification and prosecution history.

      B. <u>The Plain and Ordinary Meaning of "Formed Between" and "Positioned Between" Does Not Resolve the Parties' Dispute</u>

The court is not persuaded by SME's resurrected arguments that "formed between" and "positioned between" are broader in scope than the court's construction. SME repeatedly urges the court to give these terms their "plain and ordinary meaning," arguing the terms "broadly connote that something is *somewhere* between two other objects."[29] SME renews its original argument that the terms "are readily understandable to the jury" and need no construction.[30]

On this score, SME advances a theory squarely rejected by the Federal Circuit in *O2 Micro International Ltd. v. Beyond Innovation Technology Co.*[31] At issue there was the proper construction of the claim term "only if."[32] Much like SME here, Plaintiff O2 Micro maintained that no construction was necessary because the term consisted of "two simple, plain English words."[33] Defendants disagreed, arguing the term should be construed as "exclusively or solely in the event that" or "never except when."[34] The district court sided with O2 Micro, concluding

---

[27] *Id.* (emphasis added).

[28] *See* Dkt. 126 at 9–16.

[29] Dkt. 128 at 5–6.

[30] *Id.* at 5.

[31] 521 F.3d 1351 (Fed. Cir. 2008).

[32] *Id.* at 1357.

[33] *Id.*

[34] *Id.*

the term had "a well-understood definition, capable of application by both the jury and this court . . . ."[35] At trial, "the 'only if' limitation was a key issue disputed by the parties" and "both parties presented arguments regarding whether or not the 'only if' claim language allows exceptions."[36]

On appeal, the Federal Circuit reversed, holding that "the parties' arguments regarding the meaning and legal significant of the 'only if' limitation were improperly submitted to the jury."[37] The Federal Circuit clarified that the parties "disputed not the *meaning* of the words themselves, but the *scope* that should be encompassed by this claim language" and that, by declining to construe "only if," the district court failed to resolve the parties' dispute.[38] Because such a dispute "over the scope of the asserted claims is a question of law," it was incumbent upon the district court to decide the matter.[39] The Federal Circuit explained,

> A determination that a claim term "needs no construction" or has the "plain and ordinary meaning" may be inadequate when . . . reliance on a term's "ordinary" meaning does not resolve the parties' dispute. In this case, for example, the parties agreed that "only if" has a common meaning, but then proceeded to dispute the scope of that claim term . . . . In this case, the "ordinary" meaning of a term does not resolve the parties' dispute, and claim construction requires the court to determine what claim scope is appropriate in the context of the patents-in-suit. This court has construed other "ordinary" words for these and other related reasons.[40]

---

[35] *Id.*

[36] *Id.* at 1358.

[37] *Id.* at 1362.

[38] *Id.* at 1361.

[39] *Id.*

[40] *Id.* at 1361–62 (citing *Nystrom v. TREX Co.*, 424 F.3d 1136, 1143 (Fed. Cir. 2005) (construing "board" in light of intrinsic record); *Unitherm Food Sys., Inc. v. Swift–Eckrich, Inc.*, 375 F.3d 1341, 1350 (Fed. Cir. 2004) (construing "golden brown" even though colors "are commonly used terms with well-accepted plain definitions that rarely need construction"), *rev'd on other grounds*, 546 U.S. 394 (2006); *Toro Co. v. White Consol. Indus., Inc.*, 199 F.3d 1295, 1299 (Fed. Cir. 1999) (construing "cover," "included," "attachment," and "removable")).

Here, like in *O2 Micro*, the parties' dispute is less about the meaning of the words "formed between" and "positioned between" and more about the scope of those claim terms in the context of the '680 Patent. SME advocates for a broad reading of the terms such that an air gap need exist only *somewhere* between the core member and a bearing member. In contrast, Defendants insist that—when read in light of the specification and prosecution history—the claim terms are narrower and require that the air gap span the entire distance between the core member and a bearing member. Thus, even accepting SME's contention that the terms "only have one ordinary meaning,"[41] a dispute remains about the terms' proper scope when read in the context of the '680 Patent. Under *O2 Micro*, to allow the parties to submit such a dispute to a jury, as SME effectively proposes, might constitute plain error.[42]

Alternatively, SME contends that "if the Court determines that a construction is necessary . . . it should adopt — 'formed *somewhere* between' and 'positioned *somewhere* between,' respectively."[43] To support its argument that the plain and ordinary meaning of the terms is broader than the court's formulation, SME presents the following four illustrations:



---

[41] Dkt. 128 at 6.

[42] *See O2 Micro*, 521 F.3d at 1362 ("When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it.").

[43] Dkt. 128 at 6 n.37.

SME summarizes, "it is common vernacular to say that the red circle 'C' in each depiction is generally formed and/or positioned between the two blue rectangles 'A' and 'B' in the four figures above."[44]

SME is careful to frame its discussion of the four figures in the abstract.[45] Considered in the context of the '680 Patent, however, the figures reaffirm the court's construction. In Figures 1 and 3, the white areas around "C" presumably represent empty space.[46] Thus, because "C" stands in for the "air gap" identified in the '680 Patent, Figures 1 and 3 are indistinguishable from Figure 2, which represents the court's construction of the relevant terms. In other words, if the white area in Figures 1 and 3 represents empty space and "C" represents an air gap, the air gap spans the entire distance from "A" to "B" in Figures 1, 2, and 3.[47]

That leaves Figure 4. In this iteration, additional material—represented by the two rectangles touching "C"—is interposed between "A" and "B." But this representation conflicts with the language of the claims themselves. Claim 1 recites that an air gap "is formed between *the core member and the bearing members.*"[48] In Figure 4, the air gap is formed not between "A" and "B" (which represent the core member and bearing member) but between the two rectangles. To be sure, in some sense the air gap is *also* between "A" and "B." But the court is required to construe the claim terms not in the abstract but in light of the entire intrinsic record as

---

[44] *Id.* at 6.

[45] "A," "B," and "C" clearly represent a bearing member, the core member, and an air gap, respectively. *See* Dkt. 136 at 6–7.

[46] This is in contrast to Figure 4, in which additional material is represented by the smaller rectangles touching "C."

[47] In its Reply, SME abandons any discussion of Figures 1 and 3, instead focusing exclusively on Figures 2 and 4. *See* Dkt. 136 at 6–7.

[48] Appx. 015–016 (emphasis added).

a whole.[49] Indeed, "[t]he only meaning that matters in claim construction is the meaning in the context of the patent."[50] Read in the context of the specification and prosecution history, it becomes clear the construction SME seeks is overly broad. The court turns to that issue now.

## II. The Specification and Prosecution History Impliedly Narrow the Scope of "Formed Between" and "Positioned Between"

By construing "formed between" and "positioned between" to mean "spans the distance between," SME asserts the court "commit[ted] the 'cardinal sin' of claim construction—importing unsupported limitations from the specification."[51] Though a cardinal sin, it is a maxim easily transgressed. "The distinction between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim can be a difficult one to apply in practice."[52] Notwithstanding this fine line, the court remains confident its construction does not read a limitation into the claim from the specification. Rather, both the specification and prosecution history confirm "formed between" and "positioned between" are narrower in the context of the '680 Patent than SME suggests.

SME contends "there are 'only two exceptions to [the] general rule' that claim terms are construed according to their plain and ordinary meaning: '(1) when a patentee sets out a definition and acts as his own lexicographer, or (2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution.'"[53] However, such redefinition

---

[49] *See Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("We cannot look at the ordinary meaning of the term . . . in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history.").

[50] *Symantec Corp.*, 811 F.3d at 1363 (citing *Phillips*, 415 F.3d at 1316).

[51] Dkt. 136 at 1.

[52] *Phillips*, 415 F.3d at 1323 (citing *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186–87 (Fed. Cir. 1989) ("[T]here is sometimes a fine line between reading a claim in light of the specification, and reading a limitation into the claim from the specification.")).

[53] Dkt. 128 at 7 (quoting *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014)).

or disavowal may be implied rather than explicit.[54] Indeed, "a patent applicant need not expressly state 'my invention does not include X' to indicate his exclusion of X from the scope of his patent because 'the patentee's choice of preferred embodiments can shed light on the intended scope of the claims.'"[55] That is the case here.

SME disputes the Claim Construction Order's conclusion that the specification and prosecution history narrow the scope of the claim terms—either explicitly or implicitly—and argues the court's analysis of the intrinsic record reveals the court "may have misunderstood the orientation and functionality of the claimed BRBs."[56] As described repeatedly in the specification, the Claim Construction Order observed that the air gap's core function is to "prevent bonding of the core member and buckling restraining assembly [*i.e.*, cementitious material]."[57] SME takes issue with the court's subsequent statement that the air gap's "central purpose could not be accomplished if the air gap spanned less than the entire distance between the bearing member and the core member, lest the cementitious material come into contact with the core member at one or more points."[58] SME asserts "[t]he cementitious material can never

---

[54] *Symantec Corp.*, 811 F.3d at 1364 (quoting *Phillips*, 415 F.3d at 1320–21) ("As our en banc opinion in *Phillips* made clear, 'a claim term may be clearly redefined without an explicit statement of redefinition' and '[e]ven when guidance is not provided in explicit definitional format, the specification may define claim terms by implication such that the meaning may be found in or ascertained by a reading of the patent documents.'").

[55] *Id.* (quoting *Astrazeneca AB v. Mut. Pharm. Co.*, 384 F.3d 1333, 1339 (Fed. Cir. 2004)); *see also On Demand Mach. Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331, 1340 (Fed. Cir. 2006) ("[W]hen the scope of the invention is clearly stated in the specification, and is described as the advantage and distinction of the invention, it is not necessary to disavow explicitly a different scope."); *Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1333 (Fed. Cir. 2009) (finding disavowal implicitly); *Boss Control, Inc. v. Bombardier Inc.*, 410 F.3d 1372, 1377 (Fed. Cir. 2005) (same).

[56] Dkt. 128 at 9.

[57] *E.g.*, Appx. 010 at 1:14–15 ("An air gap is positioned between the core member and the one or more bearings of the buckling restraining apparatus to prevent bonding of the core member and buckling restraining assembly."); *id.* at 2:44–48 (same); Appx. 011 at 4:5–8 (same); Appx. 013 at 7:8–9 (same).

[58] Dkt. 126 at 15.

contact the core member because the 'bearing member' retains the cementitious material."[59] In stark contrast with the specification and prosecution history, SME now seems to contend it is the bearing member—not the air gap—that prevents bonding of the core member and the buckling restraining assembly.

But to overcome the Patent Examiner's objection in light of Takeuchi, SME explicitly confirmed it was the air gap—not any other intervening material, bearing member or otherwise—that its device utilized to prevent bonding between the core member and buckling restraining assembly.[60] SME explained,

> As noted by the examiner, Takeuchi fails to teach or suggest the use of an air gap between the core member and the buckling restraining assembly to prevent bonding of the assembly to one or more portions of the core member . . . . Takeuchi teaches the use of an adhesion-preventive film to serve the purpose of preventing the steel center member from adhering *to the concrete*. Therefore, there is no motivation to incorporate an air gap into Takeuchi in order to accomplish the same purpose [*i.e.*, preventing the steel center member from adhering to the concrete]. *Indeed, the use of an air gap would defeat the purpose of the adhesion-preventive film.*[61]

SME never explains the contradiction between its arguments before the Patent Examiner and its contention now that the air gap does not serve to separate the cementitious material from the core member. SME states in conclusory fashion only that the prosecution history "does not shed any light on the proper interpretation of the claim terms at issue" and does not show SME "clearly" narrowed the scope of "formed between" and "positioned between."[62]

But if the cementitious material could never contact the core member because the cement is retained by the bearing member, it becomes unclear how the air gap prevents bonding. That is,

---

[59] Dkt. 128 at 9.

[60] Appx. 093.

[61] *Id.* (emphasis added).

[62] Dkt. 136 at 10.

the bonding agent is the cementitious material. If there is no risk of that agent entering the space between the bearing member and the core member, then bonding would not occur regardless of whether an air gap was formed between the bearing member and the core member. Accordingly, SME's present explanation of the bearing member's role retaining the cementitious material renders the air gap superfluous—a result directly at odds with the claims, the specification, and the prosecution history.

In contrast, SME's explanation in the prosecution history suggests the cementitious material is at times at risk of coming in contact with the core member but that the introduction of the air gap mitigates that risk.[63] That is why SME explained the air gap served the same function of Takeuchi's film, which was to "serve the purpose of preventing the steel center member from adhering *to the concrete*."[64] In any event, even accepting that the bearing members retain the cementitious material, the air gap appears to serve a fail-safe function—the spatial separation adds an additional protective measure to ensure the steel core does not bond to the buckling restraining assembly in conjunction with the bearing members. Because the specification confirms SME's description in the prosecution history of the air gap's function, the court adopted that conception of the BRB in construing the claim terms. Thus, the court did not err in concluding the air gap could not serve its primary purpose if it did not extend completely from the core member to the bearing member.

---

[63] For instance, imagine a scenario in which one of the bearing members is compromised such that it failed to completely retain the cementitious material (through a tear, for example). Absent an air gap, the core member would adhere to the buckling restraining assembly. In this sense, the inclusion of the air gap serves a belt-and-suspenders function—working in conjunction with the bearing members to prevent bonding.

[64] Appx. 093 (emphasis added).

Nevertheless, SME argues "so long as the air gap is positioned *somewhere* between the bearing member and the core member, the stated objective of preventing bonding via an air gap is achieved."[65] SME illustrates this point with the following illustration:



SME argues without explanation that in both circles shown above, it is the air gap that prevents bonding between the core member and the buckling restraining assembly—regardless of whether there is additional material inserted into the space separating the steel core and restraining assembly.[66] The court disagrees. In the circle depicted on the far right above, if the cementitious material were to breach the bearing member, it is the additional material that would intervene in the first instance to prevent bonding between the core member and the buckling restraining assembly. Thus, were such an additional, intervening material introduced into the space between the core member and bearing members, it would defeat the purpose of the air gap.

Besides, there is not even a hint in the claims, the specification, or the prosecution history that contemplates the design depicted above in the circle on the far right. Rather, in each embodiment described in the specification and depicted in the illustrations, the air gap spans the

---

[65] Dkt. 128 at 9.
[66] Dkt. 128 at 10; Dkt. 136 at 8–10.

distance between the core member and bearing members.[67] Courts regularly reject claim term interpretations at odds with consistent embodiments exemplified in the specification.[68] To construe the claims as SME proposes would unduly expand the scope of the '680 Patent.[69]

At bottom, the court was tasked with choosing between two alternative constructions. On the one hand, SME's proposed construction was conceived in the abstract, unsupported by the specification, and contradicted by the prosecution history.[70] On the other hand, Defendants' proposed construction harmonized the claim language, the specification, and the prosecution history. Faced with these competing views of the '680 Patent, SME has not persuaded the court that its Claim Construction Order construing "formed between" and "positioned between" as "spans the distance between" was clearly erroneous.

## CONCLUSION

For the reasons explained above, the court DENIES SME's Motion.[71] Pursuant to the court's April 20, 2020 Order, the parties should meet and confer and submit within fourteen (14) days a joint amended scheduling order that addresses each of the dates and issues identified in

---

[67] *See* Dkt. 126 at 14. SME asserts the court's construction limits "formed between" and "positioned between" to "a single embodiment." Dkt. 128 at 1, 8. That is not the case. As the court explained in its Claim Construction Order, the air gap spans the distance between the core member and bearing members across all the various embodiments described in the '680 Patent. *See* Dkt. 126 at 14.

[68] *See, e.g.*, *In re Abbott Diabetes Care Inc.*, 696 F.3d 1142, 1149 (Fed. Cir. 2012) (rejecting an interpretation of "electrochemical sensor" that would exclude wireless configurations in part because "every embodiment disclosed in the specification shows an electrochemical sensor without external cables or wires" and the "patents repeatedly, consistently, and exclusively depict an electrochemical sensor without external cables or wires") (internal quotation marks and citations omitted).

[69] *See Phillips*, 415 F.3d at 1323 (noting it may become clear from the specification that "there was 'nothing in the context to indicate that the patentee contemplated any alternative' embodiment to the one presented") (quoting *Snow v. Lake Shore & M.S. Ry. Co.*, 121 U.S. 617, 630 (1887)).

[70] *See Nystrom*, 424 F.3d at 1144–45 (explaining that a patentee "is not entitled to a claim construction divorced from the context of the written description and prosecution history").

[71] Dkt. 128.

that Order.[72] If the parties are unable to agree on an amended scheduling order, they may submit their respective proposals to the court.

SO ORDERED this 6th day of July 2020.

BY THE COURT:

_____
ROBERT J. SHELBY
Chief United States District Judge

---

[72] Dkt. 134.