IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SME STEEL CONTRACTORS, INC., a Utah corporation; and CORE-BRACE, LLC, a Utah limited liability company,<br><br>       Plaintiffs,<br><br>v.<br><br>SEISMIC BRACING COMPANY, LLC, a Utah limited liability company; and ANDREW J. HINCHMAN, an individual,<br><br>       Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:17-cv-00702-RJS-DAO<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg |

Plaintiffs SME Steel Contractors, Inc. (SME) and Core-Brace, LLC (Core-Brace) are business competitors with Defendants Seismic Bracing Company, LLC (SBC) and Andrew Hinchman. All parties are involved in the design of buckling-restrained braces, which are structural devices that help buildings withstand seismic activity. Plaintiffs filed suit against Defendants, asserting claims for, among other things, false advertising, false association, patent infringement, and copyright infringement.[1] Defendants counterclaimed.[2]

Three motions are now before the court: (1) Defendants' Motion for Partial Summary Judgment on SME's patent infringement claim (Defendants' First Motion),[3] (2) Defendants' Motion for Partial Summary Judgment on Plaintiffs' other claims (Defendants' Second Motion),[4] and (3) Plaintiffs' Motion for Summary Judgment on Defendants' Counterclaims (Plaintiffs'

---

[1] *Second Amended Complaint* (ECF 63) at 9–20.

[2] *Defendants' Answer, Affirmative Defenses, and Counterclaims* (ECF 70) at 17–19.

[3] *Defendants' Renewed Motion for Partial Summary Judgment* (ECF 161).

[4] *Defendants' Motion for Partial Summary Judgment* (ECF 195).

Motion).[5]  For the reasons stated below, Defendants' First Motion is GRANTED, Defendants'

Second Motion is GRANTED IN PART and DENIED IN PART, and Plaintiffs' Motion is

DENIED.

**BACKGROUND**[6]

**Buckling-Restrained Braces**

Buckling-restrained braces (BRBs) are "structural support members used in the

construction of large steel structures."[7]  The court previously summarized the purpose and

function of BRBs:

> BRBs absorb seismic forces from earthquakes that would otherwise be exerted on
> a structure through plastic deformation.  When an earthquake occurs, the steel core
> running through the middle of the BRB compresses or elongates without buckling.
> To absorb the seismic forces without destroying the BRB, the steel core must be
> free to move independently of the bracing element (i.e., the concrete-filled outer
> steel frame).  When manufacturing a BRB, the steel core must therefore be
> prevented from bonding with the bracing element.  This separation of steel core and
> bracing element allows the steel core to absorb seismic energy from the ends of the
> BRB without conveying that energy to the bracing element.[8]

---

[5] *Plaintiffs' Motion for Summary Judgment on Defendants' Counterclaims* (ECF 198 Sealed Version) (ECF 196
Public Version).

[6] The following facts are material and unless otherwise indicated not in dispute.  They are drawn from the parties'
summary judgment briefings and attached exhibits.  Fed. R. Civ. P. 56(c)(1).  When examining each motion for
summary judgment, the court views the evidence and draws all reasonable inferences in favor of the nonmoving
party.  *See United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 906–07 (10th Cir. 2016) ("Where, as here, we are
presented with cross-motions for summary judgment, we must view each motion separately, in the light most
favorable to the non-moving party, and draw all reasonable inferences in that party's favor." (quotations omitted)).
Accordingly, the court recites the facts in the light most favorable to Defendants when discussing their
counterclaims, but otherwise recites the facts in the light most favorable to Plaintiffs.

[7] *Defendants' Response to Plaintiffs' Motion for Partial Summary Judgment* (ECF 211 Sealed Version) (ECF 209
Public Version) ¶ 1.

[8] *Memorandum Decision and Order Construing Claims* (ECF 126) at 3 (footnotes omitted).

2

A BRB is depicted in Figure A,[9] which shows how the steel core fits within the buckling restraining assembly.  Both ends of the steel core can be seen protruding from either end of the buckling restraining assembly.[10]

*Figure A*



Although BRBs are increasingly being "used in new structural steel construction projects, the BRB industry is still developing and might be considered a 'niche product' even within the steel construction industry."[11]

**The Parties**

Core-Brace was founded in 2002 and has since designed, developed, manufactured, tested, and marketed BRBs.[12]  SME fabricates and erects structural steel, with fabrication

---

[9] Figure A is reproduced from Figure 1 of the '680 Patent. *See Exhibit 1 to ECF 161: United States Patent No. 7,174,680* (ECF 161-2) at 4.

[10] *See id.* at 12.

[11] *Declaration of Dieter Klohn in Support of Plaintiff Core-Brace, LLC's Renewed Consolidated Motion for Temporary Restraining Order and Preliminary Injunction* (ECF 19) ¶ 13.

[12] ECF 211 ¶ 3.

facilities in Utah and Idaho.[13]  SME is also the owner by assignment of U.S. Patent No.

7,174,680 ('680 Patent), which is a patent for an improved BRB.[14]  Core-Brace and SME are

owned by the same parent company.[15]

Hinchman worked for SME as a chief engineer until he resigned sometime in 2010 or

2011.[16]  In 2016, Hinchman registered SBC as a limited liability company in Utah and through

SBC, "began marketing BRBs and bidding [on] structural steel design jobs incorporating BRB

technology."[17]

Both Core-Brace and SBC market and sell their BRBs by bidding on projects, and they

have submitted bids for the same projects.[18]

**SME's BRB Testing & Design Manual**

Hinchman asked the University of Utah to evaluate and test five of SME's BRBs.[19]  In

July 2016, the University issued a report concluding two of the five BRBs did not satisfy

American Institute of Steel Construction (AISC) 341-10 requirements.[20]  The report stated,

"Further development is required for improving these two BRB types."[21]

---

[13] *Id.* ¶ 4.

[14] ECF 63 ¶ 13; *see generally* ECF 161-2.

[15] ECF 211 ¶ 4.

[16] *Plaintiff SME Steel Contractors, Inc.'s Opposition to Defendants' Renewed Motion for Partial Summary Judgment* (ECF 170 Sealed Version) (ECF 168 Public Version) at 4 (Plaintiffs acknowledging Hinchman was "chief engineer at SME").  The parties dispute what year Hinchman resigned, but that fact is not material.  *Compare Plaintiffs' Opposition to* [*Defendants'*] *Motion for Summary Judgment* (ECF 218 Sealed Version) (ECF 216 Public Version) ¶ 10 (Plaintiffs alleging Hinchman resigned in 2011), *with Declaration of Andrew Hinchman* (ECF 27) ¶ 6 (Hinchman stating he resigned in 2010).

[17] ECF 211 ¶¶ 12–13.

[18] ECF 195 at 11; ECF 218 at 12–13, 31–32; *Defendants' Reply in Support of Defendants' Motion for Partial Summary Judgment* (ECF 226) at 10.

[19] ECF 211 ¶ 15.

[20] *Id.* ¶¶ 16, 22; *see also* ECF 63 ¶ 11; *Exhibit 12 to ECF 216: SBC Design Manual* (ECF 216-11) at 27.

[21] ECF 211 ¶ 22.

In March 2017, SBC sent a ninety-page document titled "Design Manual" to at least six prospective clients.[22]  The Design Manual was part of SBC's marketing and promotional efforts, and it included sections on SBC's engineering experience, projects, testing reports, and BRB design.[23]  Relevant to this case, the Design Manual included the following statements:

- "These patented methods have now been tested and qualified for use on projects in accordance with governing building codes (AISC 341)."[24]

- "Our team has over 16 years of experience in R&D, testing, designing, engineering and manufacturing Buckling-Restrained Brace (BRB)."[25]

- "We have been [] trend setters in the industry, helping develop numerous methods for connecting BRBs and streamlining production processes."[26]

- "SBC's team has been involved in projects world-wide including the following highlights:

  - Intermountain Medical Center, Murray UT, 646 BRBs

  - Marriott Library Retrofit, Univ. of UT, 128 AESS BRBs

  - World market Center, Las Vegas, NV, 596 BRBs

  - West Emergency Wing, Univ. of UT Hospital, 200+ BRBs

  - Bioengineering Lab, UCSF, 101 BRBs

  - Los Angeles Police HQ, 182 BRBs."[27]

- "Our team has experience in manufacturing over ten thousand BRBs for over 100 projects."[28]

---

[22] ECF 27 ¶¶ 20–21; *Exhibit 11 to ECF 218: Deposition of Andrew James Hinchman* (ECF 218-2) at 82:10–83:15; *see also* ECF 216-11.

[23] *See* ECF 216-11 at 4, 26–68, 77–91.

[24] *Id.* at 4.  It is not clear what "patented methods" the Design Manual is referring to, as it mentions one patent Hinchman co-invented and two patents he solely invented and owns.  *See id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

- SBC "[c]apabilities" include the "[p]roduce capacity of over 5000 BRBs per year."[29]

The Design Manual also included several technical drawings of BRBs.[30]

**Core-Brace's Copyrighted Drawings**

On June 27, 2017, Core-Brace filed three copyright registrations with the U.S. Copyright Office.[31]  Each registration claims a 2010 creation date and seeks to protect "technical drawing[s]" associated with Core-Brace's BRB designs.[32]  The first drawing is titled "BRB & Connection Layouts" and assigned number VAu001279857 ('857 Registration).[33]  The second drawing is titled "Typical Bolted BRB & Connection Layouts" and assigned number VAu001279859 ('859 Registration).[34]  Finally, the third drawing is titled "Typical Welded BRB & Connection Layouts" and assigned number VAu001279862 ('862 Registration).[35]

SBC's Design Manual included "technical drawings that are either identical to or nearly identical to the technical drawings found in the '857 Registration, '862 Registration, and/or the '859 Registration."[36]

---

[29] *Id.* at 6.

[30] *Id.* at 78–83.

[31] *Copyright No. VAu001279857* (ECF 216-8) at 2; *Copyright No. VAu001279859* (ECF 216-6) at 2; *Copyright No. VAu001279862* (ECF 216-2) at 2.

[32] ECF 216-8 at 2; ECF 216-6 at 2; ECF 216-2 at 2.  The parties purport to dispute what each drawing depicts. *Compare* ECF 195 ¶¶ 1–3, *with* ECF 218 at 7–12.  However, their disagreements amount to legal argument about whether the drawings reflect creative and artistic choices, not genuine disputes about what the drawings depict.  *See* ECF 218 at 7–12.  Accordingly, the court will recite the title of each drawing, rather than the parties' descriptions.

[33] ECF 216-8 at 2.

[34] ECF 216-6 at 2.

[35] ECF 216-2 at 2.

[36] ECF 218 ¶ 12.

6

**Plaintiffs' Complaint & TRO Motion**

On June 28, 2017, Plaintiffs initiated this action against Defendants.[37]   In their

Complaint, Plaintiffs asserted, among other things, Defendants infringed on SBC's patents, the

Design Manual was false advertising, and the Design Manual improperly used Core-Brace's

materials and intellectual property.[38]

The following day, Core-Brace filed a Motion for Temporary Restraining Order and

Preliminary Injunction (TRO Motion).[39]   In the TRO Motion, Core-Brace asked the court to

"temporarily and preliminarily enjoin[] SBC from further marketing or selling of BRBs" and to

enjoin SBC "from any future use of Core-Brace's materials."[40]   Core-Brace also asked the court

to compel SBC to identify its customers and "distribute corrective information."[41]

**Plaintiffs' Letters**

In July 2017, Plaintiffs sent identical letters to three different companies Defendants were

in contact with.[42]   One of the companies was "a steel fabricator who had contracted with [] SBC

for the production of BRBs," another "was a general contractor who presumably hired the steel

fabricator, and the third was the owner of the project."[43]

---

[37] *Complaint* (ECF 2).  On July 7, 2017, Plaintiffs filed an Amended Complaint.  *First Amended Complaint* (ECF 16).

[38] ECF 2 ¶¶ 48–101.

[39] *Plaintiff Core-Brace, LLC's Consolidated Motion for Temporary Restraining Order and Preliminary Injunction* (ECF 6); *see also Plaintiff Core-Brace, LLC's Renewed Consolidated Motion for Temporary Restraining Order and Preliminary Injunction* (ECF 18).

[40] ECF 6 at 5.

[41] *Id.*  The court ultimately denied Plaintiffs' TRO Motion.  *July 25, 2017 Minute Entry* (ECF 34).  But per the parties' stipulation, the court ordered Defendants not to use certain images and to provide corrective notice to individuals or organizations to whom it sent the images.  *Stipulation* (ECF 38).

[42] ECF 211 ¶ 30; *see also Exhibit 12 to ECF 196: July 5, 2017 Letters* (ECF 196-8).

[43] ECF 70 ¶ 24; ECF 211 ¶ 30.

The letters included the name and case number of the present lawsuit and listed the claims Core-Brace asserted against Defendants.[44]  The letter also explained there was a pending TRO Motion.[45]  To the letters, Plaintiffs attached a copy of the Complaint, the TRO Motion, and a declaration filed in support of the TRO Motion.[46]

**Plaintiffs' Second Amended Complaint**

Also in July 2017, Defendants filed a Motion to Dismiss,[47] which the court granted in part and denied in part.[48]  The dismissals were without prejudice,[49] and Plaintiffs filed their Second Amended Complaint on May 10, 2018.[50]  In the Complaint, Plaintiffs asserted the following claims against Defendants:

- "False Advertising Under 15 U.S.C. § 1125(a)(1)(B)" – asserted by Core-Brace[51]

- "False Association Under 15 U.S.C. § 1125(a)(1)(A)" – asserted by Core-Brace[52]

- "Utah Deceptive Trade Practice – U.C.A. § 13-11A-3" – asserted by Core-Brace[53]

---

[44] ECF 196-8 at 2.

[45] *Id.*

[46] *Id.*; ECF 218 at 17.

[47] *Defendants' Motion to Dismiss Claims 1–8 for Failure to State a Claim Pursuant to FRCP 12(b)(6) and Incorporated Memorandum* (ECF 33).

[48] *Apr. 26, 2018 Minute Entry* (ECF 58).

[49] *Id.*

[50] ECF 63.  From now on, when the court refers to the Complaint, it is referring to the Second Amended Complaint filed on May 10, 2018.

[51] *Id.* ¶¶ 57–64.

[52] *Id.* ¶¶ 65–76.

[53] *Id.* ¶¶ 77–90.

- "Infringement of United States Patent No. 7,174,680" – asserted by SME[54]

- "Unfair Competition – U.C.A. § 13-5a-103" – asserted by SME[55]

- "Intentional Interference with Economic Relations" – asserted by SME and Core-Brace[56]

- "Copyright Infringement Under 17 U.S.C. § 101 et seq." – asserted by Core-Brace[57]

- "Defamation" – asserted by SME and Core-Brace[58]

**Defendants' Counterclaims**

Defendants filed their Answer on May 24, 2018, which included three counterclaims: "Defamation per se," "Utah Deceptive Trade Practice – U.C.A. § 13-11A-3(h)," and "Intentional Interference with Economic Relations."[59] Each counterclaim is based on the letters Plaintiffs sent to the companies Defendants were in contact with.[60] More specifically, the counterclaims are based on statements from the Complaint and TRO Motion, which were attached to the letters.[61]

---

[54] *Id.* ¶¶ 91–98. Plaintiffs initially brought two patent infringement claims—one based on the '680 Patent, and one based on U.S. Patent No. 7,305,799 ('799 Patent). *See id.* at 14–16. But in its Final Infringement Contentions, SME Steel noted it was no longer arguing Defendants infringed the '799 Patent. *Plaintiff SME Steel Contractor, Inc.'s LPR 3.1 Final Infringement Contentions* (ECF 78-1) at 3 n.2. And in their First Motion, Defendants assert that only the claim based on the '680 Patent remains. ECF 161 at 1. Plaintiffs do not challenge that assertion. *See generally* ECF 170. Given SME's footnote in the Final Infringement Contentions and lack of response to Defendants' assertion, the court concludes SME consented to dismissal without prejudice of its claim based on the '799 Patent. *See* ECF 63 ¶¶ 99–106.

[55] ECF 63 ¶¶107–11.

[56] *Id.* ¶¶ 112–19.

[57] *Id.* ¶¶ 120–34.

[58] *Id.* ¶¶ 135–38.

[59] ECF 70 ¶¶ 26–47.

[60] *Id.*

[61] *See id.*; *see also* ECF 211 ¶ 32 (listing the allegedly "false and actionable" statements from the Complaint and TRO Motion).

**Claim Construction**

Plaintiffs assert Defendants' BRB design infringes on independent claims 1, 3, 4, 9, 11, 18, 26, and 27 of the '680 Patent.[62]  On March 15, 2019, both parties filed Cross-Motions for Claim Construction.[63]  The parties asked the court to construe four disputed terms: "bearing member," "air gap," "formed between," and "positioned between."[64]  Except for Claim 27, Claim 1 is representative of how the terms are used in the allegedly infringed claims:

> at least two separate bearing members each of which is interposed between the rigid layer and the core member so that one side of the bearing member is in direct contact with the rigid layer, and an opposite side of the bearing member is not in direct contact with the core member such that an air gap is *formed between* the core member and the bearing members . . . .[65]

Unlike the other claims, Claim 27 uses "positioned between" instead of "formed between":

> a plurality of bearing members interposed between the rigid layer and the core member wherein a first bearing member is positioned adjacent to a core member first side and a second bearing member is positioned adjacent a core member second side, such that an air gap is *positioned between* the first bearing member and the core member first side and an air gap is *positioned between* the second bearing member and the core member second side, one side of each bearing member is in direct contact with the rigid layer.[66]

The relative positioning of the bearing members, core member, and air gap as described in the '680 Patent is depicted in Figure B[67]:

---

[62] ECF 170 at 6.

[63] *Plaintiff SME Steel Contractors, Inc.'s Opening Cross-Motion for Claim Construction* (ECF 76); *Defendants' Motion for Claim Construction of U.S. Patent No. 7,174,680 Pursuant to DU LPR 4.2(a)* (ECF 83).

[64] ECF 76 at 19; ECF 83 at 1; *Local Patent Rule 4.2(f) Joint Status Report Regarding Claim Construction Hearing* (ECF 98) at 2.

[65] ECF 161-2 at 16–18 (emphasis added).

[66] *Id.* at 18 (emphasis added).

[67] Figure B is an annotated version of Figure 3 from the '680 Patent.  *Id.* at 6.

*Figure B*



Defendants allege their BRBs have "corrugated cardboard positioned between a steel core and the buckling restraining assembly."[68]  SME disputes this allegation and "contends that the outmost layer of the corrugated cardboard used by [Defendants] *is* a bearing member . . . and, therefore, is a part of the 'buckling restraining assembly' in the context of the '680 Patent."[69] But "SME does not dispute that all the BRBs that the Defendants have made to date use corrugated cardboard that is positioned between the steel core and the concrete."[70]  Accordingly, for summary judgment purposes, it is undisputed that Defendants' BRBs have corrugated cardboard positioned between the core member and the concrete.  To the extent the parties' disagreements go to whether Defendants' BRBs infringe on the '680 Patent, those are legal arguments the court will address in its analysis.

---

[68] ECF 161 ¶ 5.

[69] ECF 170 ¶ 5.

[70] *Id.* (emphasis omitted).

On November 15, 2019, the court held a *Markman* hearing[71] to consider the parties'

Cross-Motions.[72]   In March 2020, it issued a written order construing the four disputed terms as

follows:

- "bearing member": "an object or surface, constructed of a hard and durable material, that supports"[73]

- "air gap": "an empty or unfilled space or interval"[74]

- "positioned between" and "formed between": "spans the distance between"[75]

SME filed a Motion for Reconsideration, asking the court to reconsider its construction of

the terms "positioned between" and "formed between."[76]   The court denied the Motion for

Reconsideration.[77]

**Motions for Summary Judgment**

Now before the court are three motions for summary judgment, two from Defendants and

one from Plaintiffs.   Defendants' First Motion seeks summary judgment on Plaintiffs' patent

infringement claim.[78]   Defendants' Second Motion seeks summary judgment on Plaintiffs' other

---

[71] *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc) ("An infringement analysis entails two steps.  The first step is determining the meaning and scope of the patent claims asserted to be infringed.  The second step is comparing the properly construed claims to the device accused of infringing." (citations omitted)), *aff'd*, 517 U.S. 370 (1996); *see also EMI Grp. N. Am., Inc. v. Intel Corp.*, 157 F.3d 887, 891–92 (Fed. Cir. 1998) ("Construction of the claims by the trial court is often conducted upon a preliminary evidentiary hearing, called a *Markman* hearing . . . .").

[72] *Nov. 15, 2019 Minute Entry* (ECF 125).

[73] ECF 126 at 9.

[74] *Id.* at 9.

[75] *Id.* at 16.  The parties stipulated to the court's definition of "bearing member," and the court adopted Plaintiffs' proposed definition of "air gap," which Defendants did not object to at the *Markman* hearing.  *Id.* at 9.  The court then engaged in a lengthy construction analysis to develop its construction of "formed between" and "positioned between," ultimately adopting Defendants' proposed construction for the reasons stated in the Order.  *Id.* at 9–16.

[76] *Motion for Reconsideration of Memorandum Decision and Order Construing Claims* (ECF 128) at 1.

[77] *Memorandum Decision and Order Denying Plaintiff's Motion for Reconsideration* (ECF 139).

[78] ECF 161.

claims.[79]  Similarly, Plaintiffs' Motion seeks summary judgment on all Defendants'

counterclaims.[80]

On March 10, 2022, and following full briefing, the court held a hearing on all three

summary judgment motions as well as three evidentiary motions.[81]  At the hearing, the court

ordered the parties to submit supplemental briefing regarding Defendants' counterclaims.[82]  On

April 8, 2022, the court ordered additional supplemental briefing regarding Plaintiffs' Lanham

Act claims.[83]  After considering the parties' arguments presented in the Motions, at oral

argument, and in the supplemental briefing, the court issues the following decision.

## LEGAL STANDARDS

Summary judgment is appropriate when "there is no genuine dispute as to any material

fact" and the moving party is "entitled to judgment as a matter of law."[84]  A fact is material if it

"might affect the outcome of the suit under the governing law."[85] A dispute is genuine "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."[86]

"[T]he moving party carries the burden of showing beyond a reasonable doubt that it is

entitled to summary judgment."[87]  And even if it "does not have the ultimate burden of

persuasion at trial, it has both the initial burden of production . . . and the burden of establishing

that summary judgment is appropriate as a matter of law."[88]  The moving party may carry its

---

[79] ECF 195.

[80] ECF 196; ECF 198.

[81] *Mar. 10, 2022 Minute Order* (ECF 242).  The court ruled on the evidentiary motions at the hearing.  *Id.*

[82] *Id.*

[83] *Order for Supplemental Briefing* (ECF 248).

[84] Fed. R. Civ. P. 56(a).

[85] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[86] *Id.*

[87] *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008) (quotation simplified).

[88] *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002).

burden "either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."[89]

If the moving party carries its burden, then "the non-moving party [must] set forth specific facts showing there is a genuine issue for trial."[90]  But if the moving party does not carry its burden, "the nonmoving party has no obligation to produce anything, even if [it] would have the ultimate burden of persuasion at trial."[91]

A court considering a motion for summary judgment must "view the evidence and make all reasonable inferences in the light most favorable to the nonmoving party."[92]  In doing so, the court's "function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[93]  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."[94]  Nonetheless, the court "must view the evidence presented through the prism of the substantive evidentiary burden."[95]

## ANALYSIS

## I.   Defendants' First Motion

Defendants request summary judgment on SME's patent infringement claim.[96]  When a defendant asserts noninfringement, as Defendants do here, summary judgment is proper "when

---

[89] *Id.*

[90] *Id.*

[91] *Id.* (quoting *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000)).

[92] *N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008).

[93] *Liberty Lobby*, 477 U.S. at 249.

[94] *Id.* at 255.

[95] *Id.* at 254.

[96] *See generally* ECF 161.

14

no reasonable jury could find that every limitation in a properly construed claim is found in the accused device either literally or under the doctrine of equivalents."[97]   For the reasons explained below, the court concludes SME has not sufficiently shown infringement either literally or under the doctrine of equivalents.

**A.  SME has not shown literal infringement.**

"To show literal infringement of a patent, a patentee must supply sufficient evidence to prove that the accused product or process meets every element or limitation of a claim."[98]   The accused product or process must match the claim limitations "exactly."[99]   SME has not shown literal infringement because Defendants' BRB does not literally include "an air gap" that "spans the distance between" the core member and bearing member.

The patent claims include a limitation requiring there to be multiple bearing members (the bearing member limitation).[100]   The patent claims also include a limitation that there is "an air gap" "formed between" or "positioned between" the core member and the bearing member (the air gap limitation).[101]   The court construed "air gap" to mean "an empty or unfilled space or interval" and "formed between" and "positioned between" to both mean "spans the distance between."[102]   Accordingly, "an empty or unfilled space or interval" must "span[] the distance between" the bearing member and core member.

---

[97] *Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1317 (Fed. Cir. 2015).

[98] *Rohm & Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1092 (Fed. Cir. 1997).  Courts use "both the term 'element' and the term 'limitation' to refer to words in a claim."  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 234 F.3d 558, 563 n.1 (Fed. Cir. 2000), *overruled on other grounds by* 535 U.S. 722 (2002).  The Federal Circuit noted it is "preferable to use the term 'limitation' when referring to claim language and the term 'element' when referring to the accused device."  *Id.*  The court will follow that guidance, but it will not alter quoted material to comply. Accordingly, this order uses both "limitation" and "element" to refer to words in the claims.

[99] *Advanced Steel Recovery*, 808 F.3d at 1319 (quoting *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995)).

[100] ECF 161-2 at 16–18.

[101] *Id.*

[102] ECF 126 at 9, 16.

Given these definitions, Defendants argue no reasonable jury could find literal infringement because their BRB has corrugated cardboard and not "an empty or unfilled space or interval."[103]  The court agrees.  Even assuming the top layer of the cardboard is a bearing member, there is still a corrugated middle layer and a bottom layer between the bearing member and the core member.  Accordingly, there is not "an empty or unfilled space or interval" that "spans the distance between" the bearing member and core member, because that space contains at least two layers of the cardboard.

In response, SME argues the corrugated cardboard creates "a plurality of empty spaces"[104] and whether those spaces "span[] the distance between" the bearing member and core member "is a factual question that cannot be resolved on summary judgment."[105]  SME is correct that infringement is a question of fact, but that does not preclude summary judgment.[106]  A district court may resolve infringement on summary judgment if "no genuine factual issue remains."[107]  Here, even assuming "a plurality of empty spaces" qualifies as "*an* air gap," there is no genuine factual issue because no reasonable jury could find that those empty spaces "span[] the distance between" the bearing member and core member.  At most, those empty spaces span the distance between the bearing member and another layer of the cardboard.

For these reasons, the court concludes SME has not shown the accused product literally meets the "air gap" limitation.  And because literal infringement requires a showing that the accused product meets every limitation,[108] SME has not shown literal infringement.

---

[103] ECF 161 at 14.

[104] ECF 170 at 29.

[105] *Id.* at 31.

[106] *Electro Sci. Indus., Inc. v. Dynamic Details, Inc.*, 307 F.3d 1343, 1347 (Fed. Cir. 2002).

[107] *Id.*

[108] *See Rohm & Haas Co.*, 127 F.3d at 1092.

Accordingly, the court does not address the parties' additional arguments about whether the accused product literally meets the bearing member limitation.

**B.  SME has not shown infringement under the doctrine of equivalents.**

Under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention."[109]  Equivalence exists "if two devices do the same work in substantially the same way, and accomplish substantially the same result."[110]  Importantly, a doctrine-of-equivalents analysis should be applied "on an element-by-element basis"[111] and "not to the invention as a whole."[112]  This is because "[e]ach element contained in a patent claim is deemed material to defining the scope of the patented invention."[113]

SME argues there is a genuine dispute of material fact concerning whether "air gaps" created by the cardboard are equivalent to an air gap that spans the distance between the bearing member and core member.[114]  SME asserts they are equivalent because the air gaps "achieve substantially the same function (e.g., preventing bonding), in substantially the same way (e.g., by creating a physical void) to achieve substantially the same [result] (e.g., a properly sized air gap that prevents bonding while maintaining the integrity of the BRB)."[115]

---

[109] *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997).

[110] *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950) (quoting *Union Paper-Bag Mach. Co. v. Murphy*, 97 U.S. 120, 125 (1877)).

[111] *Warner-Jenkinson*, 520 U.S. at 40.

[112] *Id.* at 29.

[113] *Id.*

[114] ECF 170 at 30–36.

[115] *Id.* at 36.

Defendants contend prosecution history estoppel bars SME from invoking these equivalents.[116]  Prosecution history estoppel "limits the broad application of the doctrine of equivalents by barring an equivalents argument for subject matter relinquished when a patent is narrowed during prosecution."[117]  There are two types of prosecution history estoppel: amendment-based estoppel and argument-based estoppel.[118]  Defendants argue both apply.[119]

The court first addresses amendment-based estoppel and then argument-based estoppel. The court limits its analysis to the air gap limitation and concludes both doctrines bar SME's equivalents arguments with respect to the air gap limitation.  The court then explains that Defendants are entitled to summary judgment on SME's patent infringement claim and why it need not resolve the parties' arguments about the bearing member limitation.

### 1. Amendment-Based Estoppel

Under amendment-based estoppel, a "patentee who narrows a claim as a condition for obtaining a patent disavows his claim to the broader subject matter."[120]  The patentee has the burden of establishing the amendment "had a purpose unrelated to patentability."[121]  If the patentee provides an explanation for the amendment, the court should consider it.[122]  But if the patentee gives no explanation, "the court should presume that the patent applicant had a substantial reason related to patentability for including the limiting element added by

---

[116] ECF 161 at 16–17.

[117] *Conoco, Inc. v. Energy & Env't Int'l, L.C.*, 460 F.3d 1349, 1363 (Fed. Cir. 2006).

[118] *Id.*

[119] ECF 161 at 16.

[120] *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 737 (2002).

[121] *Warner-Jenkinson*, 520 U.S. at 40; *see also id.* at 33 (placing "the burden on the patent holder to establish the reason for an amendment required during patent prosecution").

[122] *See id.* at 33.

amendment."[123]  "In those circumstances, prosecution history estoppel would bar the application of the doctrine of equivalents as to that element."[124]

      But even if amendment-based estoppel applies, the court should still consider "what equivalents were surrendered."[125]  An equivalent may not have been surrendered if the equivalent was "unforeseeable at the time of application," the rationale underlying the amendment bears "no more than a tangential relation to the equivalent in question," or some other reason suggests "that the patentee could not reasonably be expected to have described the insubstantial substitute in question."[126]  Importantly, the patentee bears "the burden of showing that the amendment does not surrender the particular equivalent in question."[127]

      SME argues the air gaps created by Defendants' cardboard are the equivalent of an air gap that spans the distance between the bearing member and core member.[128]  Defendants contend SME is estopped from making this argument because in August 2006, SME amended its claims to include the limitations "such that an air gap is formed between the rigid layer and the bearing member" and "such that an air gap is formed between the core member and the bearing member."[129]  Defendants argue that when SME made the amendment, it "surrendered subject matter that does not include an air gap that spans the distance between the core member and the bearing member."[130]

---

[123] *Id.*

[124] *Id.*

[125] *Festo Corp.*, 535 U.S. at 738.

[126] *Id.* at 740–41.

[127] *Id.* at 740.

[128] ECF 170 at 30–36.

[129] ECF 161 at 16 (quoting *Claim Construction Joint Appendix* (ECF 79-1) at 65–70).

[130] *Id.*

SME does not respond to this estoppel argument.[131]   Accordingly, SME has not shown that the amendment was unrelated to patentability.[132]   SME also does not counter Defendants' contention that its amendment surrendered the equivalent it asserts.  So SME has not shown that the amendment does "not surrender the particular equivalent in question."[133]   SME's amendment thus bars any argument that the air gap need not span the distance between the bearing member and core member.

### 2. Argument-Based Estoppel

A patentee's arguments to the patent examiner may also surrender equivalents.[134]   "To invoke argument-based estoppel, however, 'the prosecution history must evince a clear and unmistakable surrender of subject matter.'"[135]   Consequently, courts do not "presume a patentee's arguments to surrender an entire field of equivalents through simple arguments and explanations to the patent examiner."[136]   And the relevant inquiry is "whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter."[137]

Defendants contend SME's arguments to the patent examiner estop it from now arguing the air gaps created by cardboard are equivalent to the air gap in SME's BRBs.[138]   They point

---

[131] *See* ECF 170 at 29–36.

[132] *See Warner-Jenkinson*, 520 U.S. at 33; *see also* ECF 79-1 at 72 ("[I]t was agreed that the claims would be amended as set forth above and that such amendments would overcome the prior art of reference.").

[133] *See Festo Corp.*, 535 U.S. at 740.

[134] *Conoco*, 460 F.3d at 1363.

[135] *Id.* at 1364 (quoting *Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc.*, 347 F.3d 1314, 1326 (Fed. Cir. 2003)).

[136] *Id.*

[137] *Id.* (quoting *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1457 (Fed. Cir. 1998) (en banc), *abrogated on other grounds by Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335 (Fed. Cir. 2015)).

[138] ECF 161 at 16–17.

out that the examiner initially rejected SME's claims because prior art,[139] Takeuchi, taught "the use of an adhesion-preventive film placed between the concrete and the steel center member."[140] In response to Takeuchi, SME successfully argued the following:

> Takeuchi fails to teach or suggest the use of an air gap between the core member and the buckling restraining assembly to prevent bonding of the assembly to one or more portions of the core member. . . . Takeuchi teaches the use of an adhesion-preventive film for the sole purpose of preventing the steel center member from adhering to the concrete. Therefore, there is no motivation to incorporate an air gap into Takeuchi in order to accomplish the same purpose. Indeed, the use of an air gap would defeat the purpose of the adhesion-preventive film.[141]

Defendants assert this argument clearly and unmistakably surrendered "any subject matter between the core member and the buckling restraining assembly beyond air."[142]

The court has already given credence to a similar assertion, recognizing in its Claim Construction Order that "[f]or the air gap to serve the distinguishing function [SME] describes, that gap must span from the bearing member to the core member. Were it not so, some other intervening material would then serve to separate the bearing member and core member (and thus prevent bonding), which—as [SME] argued to the examiner—would 'defeat the purpose' of the air gap."[143] In view of the arguments SME made to the examiner, SME clearly and unmistakably surrendered material other than "an empty or unfilled space or interval" serving as an air gap.

---

[139] Prior art is the documents or references used to determine whether a person of ordinary skill could make the invention. *See In re Kumar*, 418 F.3d 1361, 1368 (Fed. Cir. 2005) ("Although published subject matter is 'prior art' for all that it discloses, in order to render an invention unpatentable for obviousness, the prior art must enable a person of ordinary skill to make and use the invention.").

[140] ECF 161 at 16–17; *Exhibit 7 to ECF 168: Amendment and Response to Office Action* (168-6) at 11.

[141] ECF 161 at 16–17 (quoting ECF 168-6 at 12).

[142] *Id.* at 17.

[143] ECF 126 at 15; *see also* ECF 139 at 15.

SME does not directly respond to this contention, but it argues the '680 Patent teaches using an air gap that does not span the entire distance "between the 'bearing member' retaining the cementious material . . . and the core member."[144]  In support, it cites Figure 4 from the '680 Patent,[145] which depicts a BRB with multiple bearing members and air gaps:



| Figure 4 from the '680 Patent | Annotated Figure 4 from the '680 Patent |
|---|---|

SME's argument is unpersuasive because Figure 4 still depicts an air gap that spans the distance between the bearing member and core member, as required by the limitation.  So even if the '680 Patent teaches of an embodiment where the air gap does not span the entire distance from the core member to the bearing member retaining the cementious material, it does not teach of an embodiment where the air gap does not span the entire distance between the bearing member and core member.

For this additional reason, SME is estopped from using the doctrine of equivalents to argue Defendants' BRBs infringe on the air gap limitation.

---

[144] ECF 170 at 35.

[145] *Id.*

22

### 3.  The Bearing Member Limitation

Defendants also argue no reasonable jury could conclude their BRBs contain the equivalent of "bearing members."[146]  SME disagrees.[147]  But it is unnecessary to resolve this disagreement because even if there is a genuine dispute of material fact concerning the bearing member limitation, there is no genuine dispute concerning the air gap limitation.  As explained, summary judgment on an infringement claim is proper "when no reasonable jury could find that *every* limitation in a properly construed claim is found in the accused device either literally or under the doctrine of equivalents."[148]  Because no reasonable jury could find that the air gap limitation is found in Defendants' BRBs—either literally or under the doctrine of equivalents—the court need not address the bearing member limitation and concludes Defendants are entitled to summary judgment on SME's patent infringement claim.[149]

## II.    Defendants' Second Motion

In their Second Motion, Defendants move for summary judgment on all Plaintiffs' non-patent claims.[150]  The court addresses each claim in turn.

### A.  False Advertising and False Association Claims

Core-Brace asserts two causes of action under the Lanham Act: false advertising under 15 U.S.C. § 1125(a)(1)(B) and false association under 15 U.S.C. § 1125(a)(1)(A).[151]  These claims are based on alleged misrepresentations in SBC's Design Manual and proposal

---

[146] ECF 161 at 10–14; *see also Defendants' Reply to Plaintiff's Response to Defendants' Partial Motion for Summary Judgment* (ECF 175) at 8–12.

[147] ECF 170 at 27–29.

[148] *Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1317 (Fed. Cir. 2015) (emphasis added).

[149] In their Second Motion, Defendants argue SME has no evidence to support a damages assessment for its patent infringement claim.  ECF 195 at 27–30.  Because Defendants are entitled to summary judgment on the patent claim, the court does not address the damages argument.

[150] *See generally id.*

[151] ECF 63 ¶¶ 57–76.

documents, which Defendants sent to potential customers.[152]  The parties submitted arguments

on the merits,[153] as well as supplemental briefing on whether Core-Brace has standing to sue

under the Lanham Act.[154]  To have standing, "a plaintiff suing under § 1125(a) ordinarily must

show economic or reputational injury flowing directly from the deception wrought by the

defendant's advertising; and that occurs when deception of consumers causes them to withhold

trade from the plaintiff."[155]

      Core-Brace asserts two standing arguments.  First, it argues there is sufficient evidence to

show injury flowing directly from the alleged misrepresentations.[156]  Second, it argues the court

should presume injury because Core-Brace and Defendants are direct competitors in a sparsely

populated market.[157]  The court considers and rejects each argument below and concludes Core-

Brace does not have standing.  It accordingly does not address the merits of Core-Brace's

Lanham Act claims.

### 1.  Direct Evidence of Injury

      First, Core-Brace contends "there is ample evidence supporting the causal link between

Defendants' conduct and the specific harm to Core-Brace."[158]  The evidence Core-Brace cites is

that "the recipients of Defendants' materials were instrumental in the Defendants being awarded

---

[152] ECF 195 at 5–13; ECF 218 at 13, 21–33; *Plaintiffs' Supplemental Brief Re: Defendants' Motion for Summary Judgment on Non-Patent Claims* (ECF 257 Sealed Version) (ECF 255 Public Version) at 8–9; *see generally* ECF 216-11.

[153] ECF 195 at 5–13; ECF 218 at 21–33; ECF 226 at 2–11.

[154] ECF 257; *Defendants' Reply Brief Pursuant to April 8, 2022 Order* (ECF 260).

[155] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014); *see also id.* at 132 ("Second, we generally presume that a statutory cause of action is limited to plaintiffs who injuries are proximately caused by violations of the statute."); *Intermountain Stroke Ctr., Inc. v. Intermountain Health Care, Inc.*, 638 F. App'x 778, 792 (10th Cir. 2016) (identifying "*Lexmark*'s obvious focus on the threshold issue of standing, a matter that must be addressed before proceeding to the merits" (quotation simplified)).

[156] ECF 257 at 8–10.

[157] *Id.* at 6–8.

[158] *Id.* at 3.

the projects to the detriment of Core-Brace."[159]  Even assuming that is true,[160] it does not say

anything about to what extent—if at all—the recipients considered or relied on the alleged

misrepresentations.  Without such evidence, it is equally possible the recipients relied on other

statements in the Design Manual or other aspects of Defendants' bids.  Accordingly, Core-Brace

has not presented evidence suggesting the alleged misrepresentations were the proximate cause

of its injury.

Nevertheless, Core-Brace argues it is not required to make "a definitive showing that

only the conduct at issue caused the harm 'as opposed to a myriad of other reasons.'"[161]  But the

court is not requiring Core-Brace to show that *only* the Defendants' alleged misrepresentations

caused the harm.  Rather, the court is concluding Core-Brace has not shown proximate cause

because it has not identified evidence demonstrating a nexus between the alleged

misrepresentations and its injury.

Core-Brace relatedly contends "the 'potential difficulty in ascertaining and apportioning

damages is not . . . an independent basis for denying standing where it is adequately alleged that

a defendant's conduct has proximately injured' the plaintiff."[162]  It further explains that even if

"a plaintiff cannot quantify its losses with sufficient certainty to recover damages, it may still be

---

[159] *Id.*; *see also id.* at 8–9.

[160] In their supplemental briefing, Defendants argue they "sent the Design Manual to a handful of structural engineering firms as marketing material independent of any bids or projects."  ECF 260 at 2.  They further argue that "structural steel fabricators select who wins the bid to supply braces" and "do not consult with the structural engineering firm regarding the bid."  *Id.*  Defendants' argument appears to be that those responsible for selecting winning bids did not receive the alleged misrepresentations.  *See id.* at 2–3.  However, Core-Brace included letters sent by Hinchman to steel fabricators indicating Defendants had included some of the allegedly misleading drawings in their proposals.  *See Exhibit F to ECF 257: SBC Letters* (ECF 257-4) [SEALED]; *see also* ECF 257 at 8 (identifying the misrepresentations as "the SBC Design Manual" and "proposal drawings").  Because the court must consider the evidence in the light most favorable to Core-Brace, *see Lance v. Morris*, 985 F.3d 787, 793 (10th Cir. 2021), it assumes those responsible for selecting the winning bids received the alleged misrepresentations.

[161] ECF 257 at 10 (quoting ECF 248 at 3).

[162] *Id.* (emphasis omitted) (quoting *Lexmark*, 572 U.S. at 135).

entitled to injunctive relief . . . or disgorgement."[163]   That may be so, but the court's conclusion

is not based on a "potential difficulty in ascertaining and apportioning damages."  As explained,

the court's conclusion is based on Core-Brace's failure to show proximate cause.[164]

## 2.  Presumption of Injury

Core-Brace next argues the court should presume injury because it and Defendants are

direct competitors in a sparsely populated market.[165]   In *Vitamins Online, Inc. v. Heartwise, Inc.*,

the Tenth Circuit held courts may presume injury "once a plaintiff has proven that the defendant

has falsely and materially inflated the value of its product (or deflated the value of the plaintiff's

product), and that the plaintiff and defendant are the only two significant participants in a market

or submarket."[166]

"To demonstrate that a representation was false or misleading, a plaintiff must show that

it was either 'literally false, either on its face or by necessary implication' or that it was 'literally

true but likely to mislead or confuse customers.'"[167]   Ambiguous statements cannot be literally

---

[163] *Id.* (quoting *Lexmark*, 572 U.S. at 135).

[164] Core-Brace's failure to show proximate cause also thwarts its claim for injunctive relief.  For injunctive relief, a plaintiff must "prove a likelihood of future injury."  *Lexmark*, 572 U.S. at 135.  For the same reasons Core-Brace has not shown proximate cause, it has not shown a "likelihood of future injury."  *See Am. Soc'y of Home Inspectors, Inc. v. Int'l Ass'n of Certified Home Inspectors*, 36 F.4th 1238, 1244 n.5 (10th Cir. 2022) ("The lack of evidence of injury also dooms InterNACHI's injunctive relief claim.").  Regarding disgorgement, Core-Brace argues "the standard of proof required when a plaintiff is seeking disgorgement is somewhere between the standards for money damages and injunctive relief."  ECF 257 at 10 (quoting *Vitamins Online, Inc. v. HeartWise, Inc.*, No. 2:13-cv-00982-DAK, 2020 WL 6581050, at *20 (D. Utah Nov. 10, 2020), *affirmed and remanded*, Nos. 20-4126, 21-4152, 2023 WL 4189604 (10th Cir. June 27, 2023)).  Even assuming that is the correct view when evaluating standing, Core-Brace cannot make this showing because it cannot make the purportedly lower showing necessary for injunctive relief.

[165] ECF 257 at 6–8.

[166] Nos. 20-4126, 21-4152, 2023 WL 4189604, at *9 (10th Cir. June 27, 2023).  It appears uncertain whether a plaintiff may rely on the presumption to demonstrate standing.  *See id.* at *8 n.5; *see also Hutchinson v. Pfeil*, 211 F.3d 515, 522 (10th Cir. 2000).  For purposes of this Motion, the court assumes without deciding that the presumption may apply in the standing context.

[167] *Vitamins Online*, 2023 WL 4189604, at *6 (quoting *Zoller Lab'ys, LLC. v. NBTY, Inc.*, 111 F. App'x 978, 982 (10th Cir. 2004) (unpublished)).

false.[168]  Similarly, "[c]ommercial claims that are implicit, attenuated, or merely suggestive cannot fairly be characterized as literally false."[169]  If an advertisement is literally false, a Lanham Act violation "may be established without evidence of consumer deception."[170]  But if "a plaintiff's theory of recovery is premised upon a claim of implied falsehood, a plaintiff must demonstrate, by extrinsic evidence, that the challenged advertisements tend to mislead or confuse consumers."[171]  Extrinsic evidence typically includes consumer surveys or statistical evidence indicating confusion.[172]

Core-Brace identifies three alleged misrepresentations.[173]  As explained below, it has not shown a genuine dispute of material fact supporting a conclusion that these statements are literally false.  The court will then explain that Core-Brace has failed to provide extrinsic evidence of actual consumer confusion.

First, Core-Brace argues it was literally false[174] for Defendants to state "SBC['s] Capabilities" include the ability to "[p]roduce capacity of over 5000 BRBs per year."[175]  Defendants contend this statement is not literally false because "SBC has manufacturing

---

[168] *See Gen. Steel Domestic Sales, LLC v. Chumley*, 627 F. App'x 682, 684 (10th Cir. 2015) (unpublished); *see also Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 587 (3d Cir. 2002) ("Regardless, only an *unambiguous* message can be literally false.").

[169] *Zoller Lab'ys*, 111 F. App'x at 983 (quoting *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1181 (8th Cir. 1998)).

[170] *Id.* at 982 (quoting *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 273 (4th Cir. 2002)).

[171] *Id.* (quoting *Scotts Co.*, 315 F.3d at 273).

[172] *See id.* (stating the plaintiff had "presented no consumer survey data or other extrinsic evidence"); *see also Vincent v. Utah Plastic Surgery Soc'y*, 621 F. App'x 546, 550 (10th Cir. 2015) (unpublished) ("Plaintiffs can make this showing by presenting extrinsic evidence that demonstrates a statistically significant part of the commercial audience holds the false belief allegedly communicated by the challenged advertisement." (quotation simplified)).

[173] ECF 218 at 22–25.

[174] Core-Brace argues the first and second statements are literally false but does not argue they are literally false by necessary implication.  *See id.*  The court thus construes Core-Brace's argument to be that the statements are literally false on their faces.  *See Vitamins Online*, 2023 WL 4189604, at *6 (quoting *Zoller Lab'ys*, 111 F. App'x at 982).

[175] ECF 218 at 22–23 (quoting ECF 216-11 at 6).

capabilities through the use of third party manufacturers."[176]  Viewing the evidence in the light

most favorable to Core-Brace, the statement is ambiguous, so a reasonable jury could not

conclude it is literally false.  *General Steel Domestic Sales, LLC v. Chumley*[177] illustrates this

point.  There, an employee left General Steel and founded a competing company.[178]  The former

employee advertised his company by stating it "fabricated its own steel."[179]  The Tenth Circuit

concluded this statement was literally false because the advertisement "conveyed not only that

the company supplies steel buildings or assembles pieces of steel made by others, but that it

fabricates the steel pieces *itself*."[180]  Here, Defendants used the word "produce," which, unlike

"fabricate," is ambiguous and thus cannot support a finding of literally falsity.[181]

Relatedly, Core-Brace argues it was literally false for SBC to state it could produce 5,000

BRBs because it had actually produced less than nine.[182]  Defendants counter this statement is

not literally false because stating what it can produce is not the same as stating what it has

produced.[183]  The court agrees—at most, the statement merely suggests Defendants have

produced 5,000 BRBs, but that suggestion is insufficient to support a finding of literal falsity.[184]

Second, Core-Brace argues it was literally false for Defendants to claim their "patented

methods have now been tested and qualified for use on projects in accordance with governing

---

[176] ECF 195 at 8; *see also* ECF 226 at 3.

[177] 627 F. App'x 682 (10th Cir. 2015) (unpublished).

[178] *Id.* at 683.

[179] *Id.*

[180] *Id.* at 684.

[181] *See Produce*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/produce (last visited July 10, 2023) (providing one definition as "to make available for public exhibition or dissemination: such as [a]: to provide funding for [b]: to oversee the making of").

[182] ECF 218 at 23.

[183] ECF 226 at 3.

[184] *See Zoller Lab'ys*, 111 F. App'x at 983.

building codes (AISC 341)."[185]  Core-Brace contends this is literally false because when the University of Utah tested Defendants' BRBs, two did not satisfy the AISC requirements.[186] Defendants counter this statement is not literally false because SBC offers only BRBs that have satisfied the testing requirements.[187]  Viewing the facts in the light most favorable to Core-Brace, the challenged statement is ambiguous about which BRBs qualified.  The phrase "patented methods" makes it unclear what BRBs Defendants are referencing, although it may imply Defendants are referring to all their BRBs.  While this ambiguity may demonstrate implied falsity, it cannot support a finding of literal falsity.[188]

Third, Core-Brace argues the Design Manual is misleading because it "greatly overstate[s] [Defendants'] experience and qualifications."[189]  It then identifies several potentially misleading statements, although it does not argue any of them are literally false.[190]  As explained below, the failure to demonstrate literal falsity is decisive.

Core-Brace has not presented sufficient evidence from which a reasonable jury could conclude the statements are literally false.  Accordingly, it must provide extrinsic evidence demonstrating the challenged statements "tend to mislead or confuse consumers."[191]  Core-Brace has not presented such evidence.  For example, it has not provided consumer surveys indicating confusion or any examples of actual confusion.  But Core-Brace contends it has provided such evidence because it showed SBC was awarded projects after it distributed the Design Manual.[192]

---

[185] ECF 218 at 23–24 (quoting ECF 216-11 at 4).

[186] *Id.*

[187] ECF 195 at 7.

[188] *See Zoller Lab'ys*, 111 F. App'x at 983.

[189] ECF 218 at 24.

[190] *Id.* at 24–25; *see also id.* at 26 (arguing the first two statements are literally false).

[191] *See Zoller Lab'ys*, 111 F. App'x at 982 (quoting *Scotts Co.*, 315 F.3d at 273).

[192] ECF 218 at 27.

As explained, this is not evidence of consumer confusion because there is no evidence indicating why SBC was awarded those projects over Core-Brace.

Nevertheless, Core-Brace argues it is entitled to a presumption of consumer deception because Defendants "acted with the intent to deceive consumers."[193]   In the case Core-Brace cites to support this presumption, the plaintiff presented evidence that the defendant's "employees discussed contracting with individuals in the Philippines to use a rotating IP service and multiple accounts to reduce the effect of their competitor's attempts to lower their market share."[194]   Core-Brace does not present comparable evidence.  Indeed, Core-Brace's only evidence to support this presumption is that Hinchman would have known what potential clients were looking for and that Core-Brace "was the only other major competitor in the marketplace."[195]   These facts are insufficient to show a genuine dispute of material fact regarding Defendants' intent or consumer confusion.

In short, Core-Brace has not presented sufficient evidence to create a genuine dispute of material fact concerning falsity.  Accordingly, it has not shown it is entitled to the presumption of injury, and it thus does not have standing to sue under the Lanham Act.  The Defendants are entitled to summary judgment on both Lanham Act claims.

## B.  Utah Truth in Advertising Act Claim

Defendants also seek summary judgment on Core-Brace's claim that Defendants deceptively advertised their BRBs in violation of the Utah Truth in Advertising Act (UTAA).[196] The purpose of the UTAA "is to prevent deceptive, misleading, and false advertising practices

---

[193] *Id.* (quoting *Vitamins Online, Inc. v. Heartwise, Inc.*, No. 2:13-cv-00982-DAK, 2019 WL 6682313, at *9 (D. Utah Sept. 24, 2019)).

[194] *Vitamins Online*, 2019 WL 6682313, at *10 (internal quotation marks omitted).

[195] ECF 218 at 28.

[196] ECF 195 at 13; ECF 63 ¶¶ 77–90.

and forms in Utah."[197]  Section 13-11a-3 of the UTAA lists the possible types of deceptive trade practice.[198]  In the Complaint, Core-Brace asserts Defendants' conduct constitutes deceptive trade practice under subsections (b), (c), (e), and (g).[199]

For the reasons explained below, the court concludes Defendants are not entitled to summary judgment on the claims based on subsections (e) and (g).  But the court concludes summary judgment is appropriate on the claims based on subsections (b) and (c).

### 1.  Subsections (e) and (g)

Defendants argue they are entitled to summary judgment because Core-Brace has not shown a likelihood of confusion.[200]  But subsections (e) and (g) do not require a showing of likelihood of confusion, so the court concludes summary judgment is not appropriate with respect to these subsections.

Subsection (e) states that a deceptive trade practice occurs when a person "represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have."[201]  Subsection (g) states that a deceptive trade practice occurs when a person "represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."[202]

The parties did not cite, and the court was unable to find, any Utah cases explaining what a plaintiff is required to prove to prevail under subsections (e) and (g).  But the plain language of

---

[197] Utah Code § 13-11a-1.

[198] *See id.* § 13-11a-3(1).

[199] ECF 63 ¶ 86.

[200] ECF 195 at 13.

[201] Utah Code § 13-11a-3(1)(e).

[202] *Id.* § 13-11a-3(1)(g).

those subsections does not require a likelihood of confusion.  Moreover, in their Reply, Defendants "agree that a likelihood of confusion is not necessarily required under subsections (e) or (g)."[203]  Accordingly, the court concludes Core-Brace was not required to present evidence of a likelihood of confusion to prevent summary judgment on subsections (e) and (g).

Nevertheless, Defendants presented in their Reply new arguments why summary judgment is appropriate on the UTAA claims.[204]  But the court declines to consider those arguments as they were raised for the first time in the Reply, meaning Core-Brace had no opportunity to respond to them.[205]

Defendants have not carried their burden of showing that Core-Brace does not have sufficient evidence to succeed at trial.  The court therefore declines to grant summary judgment on Core-Brace's UTAA claims, insofar as they are based on subsections (e) and (g).

## 2.  Subsections (b) and (c)

The Complaint also asserts Defendants' conduct constitutes deceptive trade practices under subsections (b) and (c).[206]  Unlike subsections (e) and (g), subsections (b) and (c) include the phrase "likelihood of confusion."  Subsection (b) states a deceptive trade practice occurs when a person "causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods and services."[207]  And subsection (c) states a deceptive trade practice occurs when a person "causes likelihood of confusion or of

---

[203] ECF 226 at 11.

[204] *Id.* at 11–12.

[205] *See In re Motor Fuel Temperature Sales Pracs. Litig.*, 872 F.3d 1094, 1112 n.5 (10th Cir. 2017) ("[A]rguments raised for the first time in a reply brief are waived.").

[206] ECF 63 ¶ 86.

[207] Utah Code § 13-11a-3(1)(b).

misunderstanding as to affiliation, connection, association with, or certification by another."[208] Given the plain language of the statute, a showing of likelihood of confusion is required.[209]

The next question is how the court should assess likelihood of confusion.  Defendants argue the *King of the Mountain* factors—used to determine likelihood of confusion in trademark infringement cases—are most appropriate.[210]  Because Core-Brace did not offer an alternative and because the parties addressed the *King of the Mountain* factors elsewhere, the court agrees those factors are the most appropriate for this analysis.[211]

The *King of the Mountain* factors are as follows:

1. "the degree of similarity between the marks;"

2. "the intent of the alleged infringer in adopting its mark;"

3. "evidence of actual confusion;"

4. "the relation in use and the manner of marketing between the goods or services marketed by the competing parties;"

5. "the degree of care likely to be exercised by purchasers;" and

6. "the strength or weakness of the marks."[212]

No factor is dispositive, and each factor's weight may vary depending on the context.[213]

The court addresses each factor separately.  It then weighs the factors and concludes a reasonable jury could not find a likelihood of confusion.

---

[208] *Id.* § 13-11a-3(1)(c).

[209] *See Robert J. DeBry & Assocs., P.C. v. Qwest Dex, Inc.*, 2006 UT 41, ¶ 21, 144 P.3d 1079 (holding a defendant's "publications did not cause a likelihood of misunderstanding or confusion as to the source, sponsorship, approval, or certification of goods or services as required by Utah Code section 13-11a-3(1)(b)").

[210] ECF 195 at 13 (citing *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089–90 (10th Cir. 1999)).

[211] *See SanMedica Int'l, LLC v. Amazon.com, Inc.*, No. 2:13-cv-0169-DN, 2015 U.S. Dist. LEXIS 50470, at *36 (D. Utah Mar. 27, 2015) (concluding the *King of the Mountain* factors were "most appropriate" for assessing likelihood of confusion under the UTAA).

[212] *King of the Mountain*, 185 F.3d at 1089–90.

[213] *Id.* at 1090.

### i.    Factor 1: Degree of Similarity Between the Marks

The parties disagree about whether this factor applies.  Defendants assert that because this is not a trademark case, there are no marks to compare.[214]  But Core-Brace explains that "[i]n cases involving confusion over endorsement by a celebrity plaintiff, 'mark' means the celebrity's persona."[215]  It then argues that because "the Lanham Act defines a 'person' as both a 'natural person' and a 'juristic person' (e.g., a 'corporation'), this line of cases is instructive."[216] The court concludes this factor is not applicable to this case and considers it neutral.

Core-Brace does not cite a case applying the celebrity-persona approach to a corporation.[217]  Moreover, in the celebrity-persona cases Core-Brace cites, the court was comparing the celebrity's persona to an image used by the defendant.  In *White v. Samsung Electronics America, Inc.*, for example, the court was comparing Vanna White's persona to an advertisement that depicted a robot dressed like White posing next to a Wheel of Fortune game show set.[218]  And in *Longoria v. Kodiak Concepts LLC*, the court was comparing the celebrities to their own photographs.[219]

Here, Core-Brace asks the court to compare its persona to the ninety-page Design Manual, with specific attention to the drawings, project list, logo, and statements regarding testing.[220]  Although the court can compare the drawings, logo, and project list, it is unclear how to compare statements about testing, particularly because the Design Manual includes SBC's

---

[214] ECF 195 at 10; ECF 226 at 7–8.

[215] ECF 218 at 29 (quoting *White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395, 1400 (9th Cir. 1992)).

[216] *Id.* (quoting 15 U.S.C. § 1127).

[217] *See id.*

[218] 971 F.2d 1395, 1396 (9th Cir. 1992).

[219] 527 F. Supp. 3d 1085, 1108 (D. Ariz. 2021).

[220] ECF 218 at 29.

testing report from the University of Utah.[221]  It is also unclear how to weigh those aspects

against the remainder of the Design Manual—including the fact that the Design Manual is

repeatedly labeled as property of SBC and does not mention Core-Brace.[222]

Core-Brace is asking the court to compare its self-described persona to the ninety-page

Design Manual.  That is a different task than courts undertake when they compare a single image

to a celebrity's persona.  For that reason, the court concludes this factor is not relevant to the

analysis and is neutral.

### ii.    Factor 2: Defendants' Intent

The focus of this factor is whether Defendants "had the intent to derive benefit from the

reputation or goodwill" of Core-Brace.[223]  Defendants argue this factor should be neutral because

"Seismic Bracing Company" and "SBC" are "not confusing with Core-Brace."[224]  But this

argument does not address intent.  And as Core-Brace points out, Hinchman was a Core-Brace

employee and was thus familiar with Core-Brace's operations.[225]  Weighing the evidence in the

light most favorable to Core-Brace, a reasonable jury could infer that Defendants intended to

capitalize on Core-Brace's reputation or goodwill.  But without more specific evidence of

Hinchman's or SBC's intent,[226] this factor weighs only moderately in Core-Brace's favor.

---

[221] ECF 216-11 at 27–34.

[222] *See generally id.*

[223] *King of the Mountain*, 185 F.3d at 1091 (quoting *Jordache Enters., Inc. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1485 (10th Cir. 1987)).

[224] ECF 195 at 11.

[225] ECF 218 at 30; *cf. King of the Mountain*, 185 F.3d at 1091–92 (holding this factor weighed against a likelihood of confusion when there was "no evidence to suggest that the defendants were even aware of plaintiff's existence" (quotation simplified)).

[226] *See Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 974–75 (10th Cir. 2002) (holding this factor weighed in favor of a likelihood of confusion because, among other evidence, the defendant's supplier sent a fax stating the defendant wanted to create a "knock-off" of the plaintiff's product).

### iii.   Factor 3: Evidence of Actual Confusion

Evidence of actual confusion is not necessary,[227] but it "is often considered the best evidence of likelihood of confusion."[228]  Core-Brace acknowledges "direct evidence of actual confusion is limited in this case," but argues the court should presume confusion because Defendants intended to capitalize on Core-Brace's reputation and won bids that Core-Brace lost.[229]  The court is unpersuaded by Core-Brace's arguments and concludes this factor weighs in Defendants' favor.

There is no evidence of actual confusion.  Core-Brace has not, for example, cited instances where a customer was actually confused,[230] nor has it cited surveys indicating customers are likely to be confused.[231]  Moreover, the court will not presume actual confusion simply because it concluded there was a genuine issue of material fact regarding Defendants' intent and because Core-Brace lost bids Defendants won.  Core-Brace has presented no evidence suggesting why Defendants won those bids, and the court is not inclined to assume actual confusion with no evidence.

Because Core-Brace has presented no evidence from which a reasonable jury could infer actual confusion, this factor weighs strongly in Defendants' favor.

---

[227] *Id.* at 974.

[228] *King of the Mountain*, 185 F.3d at 1092 (quoting *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1534 (10th Cir. 1994)).

[229] ECF 218 at 30–31.

[230] *See King of the Mountain*, 185 F.3d at 1092–93 (holding "seven examples of actual confusion" was "de minimis").

[231] *See Sally Beauty Co.*, 304 F.3d at 974 (holding this factor was neutral when a survey indicated 6.7 percent of the survey sample were confused).

### iv.    Factor 4: Similarity of Products and Manner of Marketing

When the parties' products and manner of marketing are similar, there is a greater likelihood of confusion.[232]  Core-Brace argues this factor weighs in its favor because "[b]oth parties sell BRBs, advertise the same way, and submit bids for the same projects."[233]  Defendants acknowledge the products and marketing are similar, but argue this factor should remain neutral "when considering all the factors together."[234]

The court agrees with the parties that the products and manner of marketing are similar. But the court disagrees with Defendants' assertion that the court should consider this factor neutral because of other factors.  At this point, the court is not weighing the factors against each other, and it concludes this factor weighs in Core-Brace's favor.

### v.    Factor 5: Degree of Care Exercised by Purchasers

"A consumer exercising a high degree of care in selecting a product reduces the likelihood of confusion."[235]  Buyers usually exercise little care when buying inexpensive items, especially if they are likely to buy those items on impulse.[236]  Conversely, buyers are likely to exercise a high degree of care when buying expensive items.[237]

BRBs are expensive, specialized items used in a relatively narrow market.  Accordingly, the court is persuaded by Defendants' argument that buyers are likely to exercise a high degree of care when buying BRBs.[238]  This is especially true where the buyers, as in this case, are

---

[232] *Id.* at 974.

[233] ECF 218 at 31.

[234] ECF 195 at 11.

[235] *Sally Beauty Co.*, 304 F.3d at 975.

[236] *Id.*

[237] *Id.*

[238] *See* ECF 195 at 11–12.

sophisticated parties who solicit bids (i.e., they are not buying on impulse).  Nevertheless, Core-Brace argues this conclusion is "not supported by any admissible evidence."[239]  But there is no dispute that BRBs are expensive and sold through a bidding process.[240]  Core-Brace further suggests this factor should be neutral because Core-Brace and Defendants do not always bid on the same projects.[241]  While that may be true, it does not change the conclusion that buyers are likely exercising significant care when purchasing BRBs.  This factor thus weighs strongly in Defendants' favor.

### vi.  Factor 6: Strength of the Mark

The parties again disagree over whether this factor is applicable.  Core-Brace argues the court should consider "the level of recognition [it] enjoys among members of society,"[242]  but Defendants argue this factor is inapplicable because there is no mark.[243]

Unlike with the first factor—where the court perceived little benefit in trying to compare a corporate persona to a ninety-page document—the court can evaluate Core-Brace's level of recognition among the intended audience.[244]  Accordingly, the court will evaluate the "strength of the mark" by assessing Core-Brace's level of recognition among those buying BRBs.

---

[239] ECF 218 at 32.

[240] See, e.g., ECF 19 ¶ 13 (stating "the BRB industry is still developing and might be considered a 'niche product'"); id. ¶ 30 (discussing bidding).

[241] ECF 218 at 32.

[242] Id. at 32–33 (quoting White, 971 F.2d at 1400).

[243] ECF 195 at 10.

[244] See White, 971 F.2d at 1400.  Although White refers to the level of recognition a "celebrity" has among "members of society," courts seem to inquire whether the plaintiff is a celebrity among the intended audience.  See, e.g., Amazon Inc. v. Cannondale Inc., No. 99 N 571, 2000 WL 1800639, at *8 (D. Colo. July 24, 2000) (concluding mountain biker was a celebrity "among mountain bike enthusiasts," which is who the advertising was directed towards).

Core-Brace argues its level of recognition is strong because it is an "industry leader and innovator in the BRB industry."[245]   It further argues, "The record is replete with testimony and documents regarding the strength of Core-Brace's reputation in the industry and the significance of the various projects that it has worked on."[246]   In support, Core-Brace cites only the declaration of its president.[247]   But viewing the evidence in the light most favorable to Core-Brace, the court concludes there is at least some evidence from which a jury could conclude Core-Brace enjoys a strong level of recognition among those buying BRBs.   For example, Core-Brace was founded in 2002,[248] "was the first company located within the United States to expand into the then-experimental BRB industry,"[249] and has worked on major projects.[250]   From this, a jury could infer Core-Brace has a strong "mark."   This factor weighs in Core-Brace's favor.

### vii.   Weighing the Factors

In sum, factor 1 is neutral; factors 2, 4, and 6 weigh in Core-Brace's favor; and factors 3 and 5 weigh in Defendants' favor.   From a purely quantitative standpoint, it appears the factors collectively weigh in Core-Brace's favor.   But when considered together and weighed in accordance with the relative strength of each factor described above, the factors weigh in Defendants' favor such that a reasonable jury could not find there was a likelihood of confusion.

As explained, factor 2 (Defendants' intent) weighs only slightly in Core-Brace's favor. And while factor 4 (similarity of products and marketing) and factor 6 (strength of mark) weigh in Core-Brace's favor, the court concludes the weight of those factors is outweighed by the fact

---

[245] ECF 218 at 33 (quoting ECF 19 ¶ 7).

[246] *Id.*

[247] *See id.*

[248] ECF 19 ¶ 4.

[249] *Id.* ¶ 6.

[250] *Exhibit 17 to ECF 218: Plaintiffs' Awards and Letters* (ECF 218-6) at 4, 8–9.

that BRBs are an expensive, niche product sold to sophisticated parties through a bidding

process. Put differently, the uniqueness of the product and industry make it unlikely there would

be confusion, despite the similarity of the products and Core-Brace's level of recognition. Core-

Brace's failure to cite any evidence of actual confusion further strengthens the court's conclusion

on this point.

Considering the factors together, no reasonable jury could find a likelihood of confusion.

There is thus no genuine dispute of material fact concerning likelihood of confusion, and

Defendants are entitled to summary judgment on Core-Brace's UTAA claims, insofar as they are

based on subsections (b) and (c).

## C.  Unfair Competition

The sixth cause of action, asserted by SME only, is for unfair competition under Utah

Code § 13-5a-103.[251]  Both parties agree this claim requires "infringement of a patent,"[252]

meaning it rises or falls with SME's patent claim.[253]  Given the parties agreement, the court

assumes the same.  As explained in detail above, Defendants are entitled to summary judgment

on SME's patent claim[254]  and are thus entitled to summary judgment on SME's unfair

competition claim.

## D.  Intentional Interference with Economic Relations

Plaintiffs' seventh cause of action is for intentional interference with economic

relations.[255]  "Under Utah law, the elements of tortious interference are: (1) intentional

---

[251] ECF 63 ¶¶ 107–11.

[252] *See* Utah Code § 13-5a-102(4)(a)(ii)(B) (stating "unfair competition" means "infringement of a patent," among other things).

[253] ECF 195 at 21–22; ECF 218 at 39–40.

[254] *Supra* Section I.

[255] ECF 63 ¶¶ 112–19.

interference with plaintiff's existing or potential business relationships, (2) the interference is accomplished by improper means, and (3) injury suffered by plaintiff."[256]  Defendants argue Plaintiffs have not presented sufficient evidence to establish the first and second elements.[257]  For the reasons explained below, the court disagrees and concludes Defendants are not entitled to summary judgment on this claim.

Regarding the first element, Defendants contend they merely attempted "to enter an industry dominated by Plaintiffs" and "there is no evidence [they] have intentionally interfered with any potential or existing economic relation of Plaintiffs."[258]  Plaintiffs counter that interference is intentional even if a defendant does not act with a purpose of interfering, but knows "interference is substantially certain to occur as a result."[259]  Defendants do not challenge the applicability of this principle, but rather assert Plaintiffs' argument essentially creates a "de facto noncompete that is enforceable in perpetuity against any former employee."[260]  Defendants also contend it is relevant that Hinchman signed a non-compete clause that expired six months after his resignation.[261]

Defendants' contention is essentially a policy argument, which the court is not inclined to entertain.[262]  Moreover, Defendants do not adequately address Plaintiffs' argument that drawing all inferences in their favor, a jury could conclude Defendants knew interference was

---

[256] *SCO Grp., Inc. v. Int'l Bus. Machs. Corp.*, 879 F.3d 1062, 1081 (10th Cir. 2018) (emphasis omitted) (citing *Eldridge v. Johndrow*, 2015 UT 21, ¶¶ 13–14, 345 P.3d 553).

[257] ECF 195 at 25–26; ECF 226 at 17–18.

[258] ECF 195 at 25.

[259] ECF 218 at 40 (quoting *Mumford v. ITT Com. Fin. Corp.*, 858 P.2d 1041, 1044 (Utah Ct. App. 1993)).

[260] ECF 226 at 17.

[261] *Id.* at 18.

[262] *Cf. Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1295 (10th Cir. 2017) ("Further, we are generally reticent to expand state law without clear guidance from its highest court." (quotation simplified)).

"substantially certain to occur."[263]  Defendants have accordingly failed to show no genuine

dispute of material fact concerning the first element.

Regarding the second element, Defendants point out that "improper means" includes

"only those actions that are contrary to law, such as violations of statutes, regulations, or

recognized common-law rules, or actions that violate an established standard of a trade or

profession."[264]  They then argue that because they are entitled to summary judgment on all

Plaintiffs' claims, Plaintiffs have no evidence of improper means.[265]  Plaintiffs respond that

genuine disputes remain on their claims, meaning there is at least a genuine dispute of material

fact regarding whether Defendants used improper means.[266]

Because the court has not concluded Defendants are entitled to summary judgment on all

Plaintiffs' claims, there is a genuine dispute of material fact concerning the improper means

element.  Defendants are thus not entitled to summary judgment on this claim.

### E.  Copyright Infringement

Core-Brace asserts Defendants improperly used its copyrighted drawings in the Design

Manual.[267]  To succeed, Core-Brace "must show: (1) ownership of a valid copyright, and

(2) copying by [Defendants] of protected components of the copyrighted material."[268]  The

parties disagree on both elements.[269]  For purposes of this Motion, the court assumes Core-Brace

has established a genuine dispute of material fact regarding infringement.  Nevertheless, the

---

[263] *See* ECF 218 at 41 (quoting *Mumford*, 858 P.2d at 1044).

[264] ECF 195 at 26 (quoting *John Bean Techs. Corp. v. B GSE Grp., LLC*, 480 F. Supp. 3d 1274, 1328 (D. Utah 2020)); *accord C.R. England v. Swift Transp. Co.*, 2019 UT 8, ¶ 42, 437 P.3d 343.

[265] *Id.* at 26.

[266] ECF 218 at 41–42.

[267] ECF 63 ¶¶ 120–34.

[268] *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 831 (10th Cir. 1993).

[269] ECF 195 at 14–18; ECF 218 at 34–36; ECF 226 at 12–14.

court grants summary judgment in Defendants' favor because Core-Brace has not presented sufficient evidence of damages.

"[A]n infringer of copyright is liable for either—(1) the copyright owner's actual damages and any additional profits of the infringer . . . or (2) statutory damages."[270]  Below, the court addresses statutory damages, and then actual damages and Defendants' profits.  It concludes Core-Brace has not shown a genuine dispute of material fact with respect to either.

### 1. Statutory Damages

Instead of actual damages and profits, a copyright owner may elect to receive statutory damages.[271]  But statutory damages are not available for "any infringement of copyright in an unpublished work commenced before the effective date of its registration" or "any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work."[272]

Defendants assert they circulated the Design Manual in March 2017.[273]  The relevant works were registered on June 27, 2017.[274]  Accordingly, Defendants argue statutory damages are unavailable because any infringement commenced before the effective date of registration

---

[270] 17 U.S.C. § 504(a).

[271] *Id.*; *see also id.* § 504(c)(1).

[272] 17 U.S.C. § 412; *see also S. Credentialing Support Servs., L.L.C. v. Hammond Surgical Hosp., L.L.C.*, 946 F.3d 780, 782 (5th Cir. 2020) ("A plaintiff cannot recover statutory damages, and sometimes more importantly, attorney's fees, for 'any infringement' a defendant commences before the plaintiff registered the copyright.").  There are exceptions, *see* 17 U.S.C. § 412, but neither party has argued they are applicable.

[273] ECF 195 at 20 (citing ECF 27 ¶ 21).

[274] *See* ECF 216-2; ECF 216-6; ECF 216-8.

and because registration occurred after the three-month window.[275]  Core-Brace does not challenge this conclusion.[276]

Assuming the Design Manual is a published work, it is not entirely clear how long the three-month window extends because the parties have not included the specific date of publication.[277]  But given Core-Brace's concession, the court concludes the timing of the infringement precludes Core-Brace from collecting statutory damages.

### 2.   Actual Damages and Profits

Because statutory damages are unavailable, Core-Brace is left arguing for actual damages and profits.[278]  Actual damages are damages suffered by the copyright owner "as a result of the infringement."[279]  Profits can be direct or indirect.  "Generally, direct profits are those derived from the infringer's sales of the infringed work, while indirect profits represent the benefit derived by the infringing party as a result of the infringement."[280]  To recover indirect profits, a copyright owner must show a "causal link between the infringement and the indirect profits."[281]

The parties' arguments focus on whether there is sufficient evidence to establish a causal link between the infringement and Defendants' profits.[282]  The court also limits its analysis to indirect profits, and as explained below, it concludes Core-Brace has not shown a causal connection.

---

[275] ECF 195 at 20.

[276] *See* ECF 218 at 34–38.

[277] *See* ECF 195 at 20.

[278] *See* 17 U.S.C. § 504(a).

[279] *Id.* § 504(b).

[280] *Rocking Chair Enters., L.L.C. v. Macerich SCG Ltd. P'ship*, 407 F. Supp. 2d 1263, 1271 (W.D. Okla. Dec. 27, 2005); *see also Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 796 (8th Cir. 2003) (discussing direct and indirect profits); *Mackie v. Rieser*, 296 F.3d 909, 914 (9th Cir. 2002) (same).

[281] *See Rocking Chair Enters.*, 407 F. Supp. 2d at 1271; *Andreas*, 336 F.3d at 796; *Mackie*, 296 F.3d at 914.

[282] ECF 195 at 18–19; ECF 218 at 36–38.

Core-Brace argues it has shown a causal connection because companies that received the Design Manual later purchased BRBs from Defendants.[283]  Even assuming that is true, Core-Brace has not presented evidence that the companies' decisions to purchase Defendants' BRBs were in any way related to the copyrighted works.[284]  This is particularly true because the Design Manual is ninety pages.  Even assuming the recipients were influenced by the Design Manual, it is not clear which parts of the Design Manual were influential to any given decision maker.

A helpful comparison is the Ninth Circuit's *Mackie v. Rieser* case.[285]  There, a symphony created a "twenty-four page promotional brochure."[286]  One page in the brochure featured a collage, which included pictures of a local artist's work.[287]  The artist sued for copyright infringement, but the court concluded the artist had not shown a causal connection between the infringement and the symphony's profits.[288]  Specifically, the court explained there was no evidence people subscribed to the symphony because of the artwork—they could have subscribed "because of the Symphony's reputation, or the conductor, or a specific musician, or the dates of the concerts, or the new symphony hall, or the program, or the featured composers, or community boosterism, or simply a love of music, or . . . ?"[289]  Like the artist in *Mackie*, Core-Brace has presented no evidence establishing the copyrighted drawings—as opposed to other factors—influenced the recipients.

---

[283] ECF 218 at 37.

[284] *See id.* at 36–38.

[285] 296 F.3d 909 (9th Cir. 2002).

[286] *Id.* at 912.

[287] *Id.*

[288] *Id.* at 916.

[289] *Id.*; *see also Rocking Chair Enters.*, 407 F. Supp. 2d at 1271–74 (concluding the connection between increased mall profits and a song used in a commercial was "too attenuated to create the nexus required to show causation"); *Andreas*, 336 F.3d at 797–98 (concluding there was causal evidence when the copyrighted work was the "centerpiece" of an Audi commercial and Audi gave the advertising agency that created the commercial a bonus because of the commercial's success).

45

Nevertheless, Core-Brace faults Defendants for not apportioning their damages.[290]  To be sure, the "infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."[291]  But this apportionment occurs after the copyright owner has presented evidence of a causal connection between the infringement and the infringer's profits.[292]  Because Core-Brace has not presented sufficient evidence of a causal connection, the court need not consider apportionment.

For these reasons, the court concludes Defendants are entitled to summary judgment on Core-Brace's copyright claim.

## F. Defamation

Plaintiffs' final cause of action is for defamation, including defamation per se.[293]  This claim is based on emails Defendants sent to third parties discussing the present litigation.[294]  For the reasons explained below, the court concludes Defendants have not met their burden of showing they are entitled to summary judgment on this claim.

"Under Utah law, a statement is defamatory if it impeaches an individual's honesty, integrity, virtue, or reputation and thereby exposes the individual to public hatred, contempt, or ridicule."[295]  Some categories of statements qualify as defamation per se, meaning "injury can be presumed from the words alone."[296]  Those categories are "(1) charge of criminal conduct,

---

[290] ECF 218 at 37–38.

[291] 17 U.S.C. § 504(b).

[292] *Mackie*, 296 F.3d at 915 (holding courts should inquire into the causal connection before considering apportionment); *see also Andreas*, 336 F.3d at 796 ("The burden of establishing that profits are attributable to the infringed work often gets confused with the burden of apportioning profits between various factors contributing to the profits.").

[293] ECF 63 ¶¶ 135–38; ECF 218 at 39 (arguing Defendants' statements "constitute not only defamation, but defamation per se").

[294] *See* ECF 63 ¶¶ 52–56.

[295] *West v. Thompson Newspapers*, 872 P.2d 999, 1008 (Utah 1994).

[296] *Allred v. Cook*, 590 P.2d 318, 321 (Utah 1979).

(2) charge of a loathsome disease, (3) charge of conduct that is incompatible with the exercise of a lawful business, trade, profession, or office; and (4) charge of the unchastity of a woman."[297]

Defendants argue they are entitled to summary judgment because the statements "are by definition not defamatory" and because they were "merely [trying] to defend themselves and their positions to third parties."[298]  Additionally, they argue the statements are "rhetorical hyperbole vaguely accusing a business of wrongdoing," which "does not rise to the level of defamation per se."[299]  But in their Motion, Defendants do not identify the allegedly defamatory statements or assess their content.[300]  Plaintiffs argue this "lack of specificity alone warrants the denial of the Motion."[301]

The court agrees with Plaintiffs.  As the movants, Defendants bear the initial burden of "presenting evidence to show the absence of a genuine issue of material fact."[302]  Merely asserting the statements are hyperbole and not defamatory—without even identifying the statements—is not sufficient to carry this burden.

Nevertheless, Defendants present additional arguments in their Reply.[303]  For example, they argue the statements are true and protected by the litigation privilege.[304]  While those are

---

[297] *Id.* at 320.

[298] ECF 195 at 20–21.

[299] *Id.* at 21 (quoting *John Bean Techs. Corp.*, 480 F. Supp. 3d at 1323).

[300] *See id.* at 20–21.  In response to interrogatories, Plaintiffs identified the emails this claim is based on, meaning Defendants could have identified the statements.  *See id.* at 21.

[301] ECF 218 at 38.

[302] *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002).

[303] *See* ECF 226 at 16–17.

[304] *Id.* at 16.

defenses to a defamation claim, Defendants failed to raise them in their Motion.  Accordingly,

Plaintiffs had no opportunity to respond, and the court declines to consider them now.[305]

For these reasons, Defendants have not shown they are entitled to summary judgment on

Plaintiffs' defamation claim.

## III.   Plaintiffs' Motion

Defendants assert three counterclaims: defamation per se, deceptive trade practices, and

intentional interference with economic relations.[306]  These claims are based on letters Plaintiffs

sent to third parties regarding their lawsuit against Defendants.[307]  Plaintiffs moved for summary

judgment, arguing they are entitled to judgment as a matter of law on all the claims.[308]

The court addresses each claim in turn.  For the reasons explained below, it concludes

Plaintiffs are not entitled to summary judgment on any of the claims.

### A.  Defamation Per Se

Shortly after filing the Complaint and TRO Motion, Plaintiffs' counsel sent a letter to

three companies.[309]  The letter explained Plaintiffs had sued Defendants, identified the claims

asserted and the case number, and attached the Complaint and TRO Motion.[310]

Defendants do not argue the letter itself is defamatory.[311]  Rather, Defendants argue the

following statements from the Complaint and TRO Motion are defamatory:

---

[305] *See In re: Motor Fuel Temperature Sales Pracs. Litig.*, 872 F.3d 1094, 1112 n.5 (10th Cir. 2017) ("[A]rguments raised for the first time in a reply brief are waived.").

[306] ECF 70 ¶¶ 26–47.

[307] *See id.*

[308] ECF 198.

[309] ECF 196-8.

[310] *Id.*

[311] *See* ECF 211 at 13–14, 18–19 (identifying the allegedly defamatory statements).

- "SBC lacks sufficient expertise, experience, and facilities to develop, design, and manufacture industry-standard BRBs."[312]

- "[Upon information and belief,] Defendants have not instituted the necessary quality control measures to ensure the safety and functionality of the BRBs."[313]

- "[Upon information and belief,] Defendants lack the fundamental and necessary experience in BRB fabrication to ensure a safe or industry-standard product."[314]

- "Defendants' lack of quality control and experience in BRB fabrication creates a tremendous risk to the public as the failure of a BRB could have catastrophic consequences and endanger human lives."[315]

- "Defendants have further misrepresented the nature, characteristics, and qualities of their products in a manner that is confusing and misleading to the consuming public, including by claiming that their alleged BRBs have been appropriately tested when, in fact, they failed certain portions of such testing."[316]

To establish a prima facie case of defamation, Defendants must show (1) Plaintiffs "published the statements," (2) "the statements were false," (3) "the statements were not subject to a privilege," (4) "the statements were published with the requisite degree of fault," and (5) "the statements resulted in damages."[317]  "The guiding principle in determining whether a statement is defamatory is the statement's tendency to injure a reputation in the eyes of its audience."[318]  Notably, a showing of actual damages is not required if the claim is for defamation per se, as in this case.[319]

---

[312] ECF 211 ¶ 32 (quoting ECF 18 ¶ 54; ECF 19 ¶ 65).

[313] *Id.* (alteration in original) (quoting ECF 63 ¶ 47).

[314] *Id.* (alteration in original) (quoting ECF 63 ¶ 48).

[315] *Id.* (quoting ECF 63 ¶ 50).

[316] *Id.* (quoting ECF 63 ¶ 62).

[317] *Jacob v. Bezzant*, 2009 UT 37, ¶ 21, 212 P.3d 535 (quoting *Oman v. Davis Sch. Dist.*, 2008 UT 70, ¶ 68, 194 P.3d 956).

[318] *Spencer v. Glover*, 2017 UT App 69, ¶ 7, 397 P.3d 780 (quoting *West v. Thompson Newspapers*, 872 P.2d 999, 1008 (Utah 1994)).

[319] *See Eskamani v. Auto-Owners Ins. Co.*, 2020 UT App 137, ¶ 28, 476 P.3d 542.  As explained, "[i]n order to constitute defamation per se, the defamatory words must charge criminal conduct, loathsome disease, conduct that is incompatible with the exercise of a lawful business, trade, profession, or office, or the unchastity of a woman." *Baum v. Gillman*, 667 P.2d 41, 43 (Utah 1983).

Plaintiffs argue they are entitled to summary judgment because the allegedly defamatory statements are true, are protected opinion, and are privileged.[320]  They also argue Defendants have not sufficiently shown damages.[321]  The court addresses each argument below.

### 1. Truth

Plaintiffs argue the statements are true and thus not defamatory.[322]  They address each statement individually, but their arguments for each statement are largely similar—namely, that the statements are true because "Defendants do not have their own manufacturing facility and instead rely on third parties"[323] and because two of Defendants' five BRBs did "not satisfy the AISC 341-10 requirements" when tested by the University of Utah.[324]

Viewing the evidence and making all reasonable inferences in the light most favorable to Defendants,[325] the court concludes a reasonable jury could find Plaintiffs' statements are not true.  For example, a reasonable jury could find that although Defendants do not directly manufacture their BRBs, that does not mean they "lack[] sufficient expertise, experience, and facilities to develop, design, and manufacture industry-standard BRBs."[326]  In other words, the

---

[320] ECF 198 at 16–27.

[321] *Id.* at 28–29.

[322] *Id.* at 17–22; *see also Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 57 (Utah 1991) ("In [Utah], truth is an absolute defense to an action for defamation.").

[323] ECF 198 at 20.

[324] *Id.* at 19.

[325] *See N. Nat. Gas Co. v. Nash Oil & Gas Co.*, 526 F.3d 626, 629 (10th Cir. 2008).  In defamation cases, the Utah Supreme Court has held that "the First Amendment's presence merits altering [the] customary rules of review by denying a nonmoving party the benefit of a favorable interpretation of factual inferences." *Jacob*, 2009 UT 37, ¶ 18 (quoting *O'Connor v. Burningham*, 2007 UT 58, ¶ 27, 165 P.3d 1214).  The court does not alter the standard here because neither party asked it to, but the court notes its conclusion would be the same under either standard. *See Hogan v. Winder*, 762 F.3d 1096, 1104 n.3 (10th Cir. 2014) (declining to decide whether the state standard applied because the defendants prevailed under either standard).

[326] ECF 211 ¶ 32 (quoting ECF 18 ¶ 54; ECF 19 ¶ 65).

jury could agree with Defendants that "SBC manufactures BRBs through the use of third party fabricators and thus has manufacturing capabilities."[327]

A reasonable jury could also find that although some of Defendants' BRBs did not qualify under AISC 341-10, it is not true that "Defendants lack the fundamental and necessary experience in BRB fabrication to ensure a safe or industry-standard product"[328] and "have not instituted the necessary quality control measures."[329]   The jury could determine that a less-than-perfect testing record does not necessarily indicate inadequate experience and quality control.

A jury could also find that Defendants do not lack "experience in BRB fabrication,"[330] particularly given Hinchman's experience in the field.[331]   And because "SBC only provides qualified BRBs that have been approved for use,"[332] a jury could find it was not misleading for Defendants to say their BRBs have been "appropriately tested,"[333] even though two BRBs did not qualify.

But Plaintiffs argue the truth of these statements is evident when read in context of the Complaint and TRO Motion.[334]   In support, they highlight several phrases from the filings that clarify only two BRBs did not qualify.[335]   A jury might agree with that reasoning, but the court is unpersuaded that a reasonable jury could only see it Plaintiffs' way.   A reasonable jury could

---

[327] *Id.* at 22.

[328] *Id.* ¶ 32 (quoting ECF 63 ¶ 48).

[329] *Id.* (quoting ECF 63 ¶ 47).

[330] *Id.* (quoting ECF 63 ¶ 50).

[331] *See* ECF 27 ¶ 5 (Hinchman stating he has "been working in the field of BRBs since at least as early as 1998").

[332] ECF 211 at 22.

[333] *Id.* ¶ 32 (quoting ECF 63 ¶ 62).

[334] *Plaintiffs' Reply in Support of Their Motion for Summary Judgment on Defendants' Counterclaims* (ECF 227) at 12–13.

[335] *Id.*

find the allegedly defamatory statements are not true, even when read in context of the Complaint and TRO Motion.

The court is not concluding these statements are defamatory. But viewing the evidence and all reasonable inferences in Defendants' favor, a reasonable jury could find the statements are not true. Accordingly, Plaintiffs are not entitled to summary judgment based on a truth defense.

### 2. Opinion

Plaintiffs also argue the statements are not defamatory because they are opinion statements.[336] The court disagrees because, as articulated below, a reasonable jury could conclude the statements are assertions of fact.[337]

Separating fact from opinion can be difficult. This is because "authors typically describe the perceived factual bases for opinions, seeking to demonstrate that the author's opinions are grounded in common sense."[338] Accordingly, the Utah Supreme Court has articulated four factors to help distinguish between fact and opinion:

> (i) the common usage or meaning of the words used; (ii) whether the statement is capable of being objectively verified as true or false; (iii) the full context of the statement—for example, the entire article or column—in which the defamatory statement is made; and (iv) the broader setting in which the statement appears.[339]

The court addresses each factor below and then weighs them. It concludes a reasonable jury could find these factors weigh in favor of the statements being assertions of fact, not opinion.

---

[336] ECF 198 at 22–25; *see also West*, 872 P.2d at 1015 ("Because expressions of pure opinion fuel the marketplace of ideas and because such expressions are incapable of being verified, they cannot serve as the basis for defamation liability.").

[337] *See West*, 872 P.2d at 1015 (stating the Utah Constitution "protect[s] expressions of opinion, and this protection is 'abused' when the opinion states or implies facts that are false and defamatory").

[338] *Id.*

[339] *Id.* at 1018.

### i.   Factors 1 & 2: Common Usage and Objective Verifiability

Because the first two factors assess similar aspects of the statements, the court considers them together.[340]   Plaintiffs argue at least two of the statements are not "capable of being objectively verified as true or false" because they include the phrase "upon information and belief."[341]   Plaintiffs further argue the phrase "upon information and belief" "transforms the assertion from a bare statement of fact to the subjective belief of the declarant."[342]

A jury might agree with Plaintiffs that "upon information and belief" was sufficient to make the statements opinion.   But a reasonable jury could also disagree.   Specifically, a reasonable jury could conclude the phrase was not sufficient hedging to turn a "bare statement of fact" into an opinion.   Indeed, the Utah Court of Appeals has recently noted that "[p]hrases like 'we think' 'in and of themselves do not save the statements in issue from being defamatory.'"[343]   Moreover, a jury could conclude "upon information and belief" is intended to signal that the subsequent statement is grounded in fact and thus factual.

Finally, even if the court agreed with Plaintiffs, this argument does not account for the other three statements, which do not include any hedging.   Accordingly, this factor weighs in Defendants' favor.

---

[340] *See RainFocus Inc. v. Cvent Inc.*, 2023 UT App 32, ¶¶ 24–28, 528 P.3d 1221 (considering these factors together).

[341] ECF 227 at 14.

[342] *Id.*

[343] *RainFocus*, 2023 UT App 32, ¶ 30 n.9 (quoting *ZAGG, Inc. v. Catanach*, No. 12-4399, 2012 WL 4462813, at *3 (E.D. Pa. Sept. 27, 2012)).

ii.    **Factor 3: Full Context**

Plaintiffs argue this factor weighs in their favor because the recipients "would undoubtedly understand that *Plaintiffs'* legal document would be presenting *Plaintiffs'* case in the most favorable light."[344]

A jury could agree with Plaintiffs' reasoning, but it could also find the recipients would be more likely to trust statements because they were from Plaintiffs' legal filings.  In *RainFocus v. Cvent*, for example, the Utah Court of Appeals assessed a similar fact pattern—Cvent's CEO and general counsel emailed RainFocus's clients and potential clients and asserted RainFocus had "misappropriated its trade secrets and copyrights."[345]  Rainfocus counterclaimed for defamation, and Cvent argued the statements were opinion.[346]  The Utah Court of Appeals held they were not statements of opinion, and in doing so concluded the "full context" factor weighed against Cvent.[347]  Specifically, the court reasoned RainFocus's "clients or prospective clients might reasonably expect [Cvent's] CEO and General Counsel to have inside information they could rely on as truth."[348]  So too here—the jury could find the recipients would be likely to trust the statements as fact since they came from Plaintiffs, a party likely to have relevant knowledge.

Moreover, as Defendants point out, the statements come from the Complaint's "Factual Background"[349] and the TRO Motion's "Statement of Relevant Facts."[350]  This placement could indicate to readers that the statements were fact, not opinion.  Additionally, while "exaggerated

---

[344] ECF 227 at 15.

[345] 2023 UT App 32, ¶ 1.

[346] *Id.* ¶¶ 2, 22.

[347] *Id.* ¶¶ 29–32, 40.

[348] *Id.* ¶ 29.

[349] *See* ECF 63 at 3.

[350] *See* ECF 18 at 6.

or hyperbolic" language is a "a signal of opinion,"[351] the statements here are largely non-exaggerated and non-hyperbolic.  The fourth statement is borderline exaggeration because it warns about "a tremendous risk to the public as the failure of a BRB could have catastrophic consequences and endanger human lives."[352]  But the other statements all have a "serious and professional" tone, suggesting they are statements of fact.[353]

For these reasons, this factor weighs in Defendants' favor.

### iii.    Factor 4: Broader Setting

Plaintiffs again argue the recipients would read the statements as opinion because they came from Plaintiffs' court filings.[354]  But the court concludes the broader setting weighs in Defendants' favor.

*RainFocus v. Cvent* is again a useful comparison.  There, the Utah Court of Appeals defined the broader context as "Cvent reaching out to RainFocus's clients or prospective clients to discourage them from doing business with RainFocus by sharing allegations" from the lawsuit.[355]  The court stated that while the readers might have some skepticism about Cvent's motives, "in the context of intentional, private, and targeted undercutting of a competitor's business by sharing alleged facts, . . . the broader setting strongly favors an interpretation of the alleged communications as factual in nature."[356]  And the court noted that holding otherwise "would give companies license to freely tarnish a competitor's reputation in private, targeted

---

[351] *RainFocus*, 2023 UT App 32, ¶ 31.

[352] ECF 211 ¶ 32 (quoting ECF 63 ¶ 50).

[353] *See RainFocus*, 2023 UT App 32, ¶ 31 ("What's more, the tone in all four communications is serious and professional, supporting an interpretation that Cvent is conveying factual information.").

[354] ECF 227 at 15.

[355] *RainFocus*, 2023 UT App 32, ¶ 36.

[356] *Id.* ¶ 38.

communications undercutting their business so long as recipients are on notice that a lawsuit is pending."[357]

Similarly, it is evident Plaintiffs contacted the third parties in an "intentional, private, and targeted" manner.  With that setting in mind, a reasonable jury could conclude the recipients would read the statements as fact, not opinion.[358]  Furthermore, Plaintiffs' targeted messaging distinguishes this case from *Dreamstone Entertainment Ltd. v. Maysalward Inc.*,[359] a case Plaintiffs cite.  In *Dreamstone*, an attorney discussed a lawsuit in a press release, which he republished on his firm's website, along with a link to the complaint.[360]  Based on this context, the district court concluded viewers would "be unlikely to read the press release as a neutral statement of facts."[361]  But here, Plaintiffs did simply issue a press release—they targeted specific companies. That could indicate an assertion of fact, not opinion.[362]

### iv.    Weighing the Factors

A reasonable jury could find all four factors weigh in Defendants' favor.  Accordingly, a reasonable jury could find the statements are not protected opinion.  Plaintiffs are thus not entitled to summary judgment on this ground.

### 3.  Privilege

Plaintiffs argue the statements are conditionally privileged because they made them to protect a legitimate interest.[363]  In Utah, statements are conditionally privileged if they are "made

---

[357] *Id.* ¶ 36.

[358] *See id.* ¶ 37 (stating it would be "illogical" to conclude Cvent's statements "were mere opinion" given the broader setting).

[359] No. 2:14-cv-02063-CAS(SSx), 2014 WL 4181026 (C.D. Cal. Aug. 18, 2014).

[360] *Id.* at *2.

[361] *Id.* at *6.

[362] *See RainFocus*, 2023 UT App 32, ¶¶ 36–39.

[363] ECF 198 at 25–27.

to protect (1) a legitimate interest of the publisher of the communication; (2) a legitimate interest of the recipient of the communication or of a third person; or (3) a legitimate common interest between the publisher and the recipient of the communication."[364]  But the privilege is lost if the allegedly defamed party proves the publisher "acted with malice or that the publication of the defamatory material extended beyond those who had a legally justified reason for receiving it."[365]

Plaintiffs argue the legitimate interest is their concern that Defendants' BRBs will fail, causing the BRB industry to fail and significant loss of human life.[366]  Defendants counter that this concern is too speculative to qualify as legitimate interest, but regardless, Plaintiffs abused the privilege by publishing the statements with malice.[367]  The court concludes Plaintiffs have not shown the privilege applies and thus does not address Defendants' alternative malice argument.

To support their argument, Plaintiffs cite three cases where the court held there was a legitimate interest.  The court first reviews those cases and then explains why Plaintiffs' asserted interest is not comparable.

Plaintiffs first cite *Brehany v. Nordstrom, Inc.*, where a store employee was fired for allegedly selling drugs to other employees.[368]  At a meeting, the store's manager told other employees that the employee's firing was drug related and that "drug use would not be

---

[364] *Agee v. Morton Thiokol, Inc.*, No. 91-4066, 1992 WL 232473, at *2 (10th Cir. Aug. 31, 1992) (unpublished table decision); *see also Brehany v. Nordstrom*, 812 P.2d 49, 58 (Utah 1991) (explaining when the privilege is applicable).

[365] *Brehany*, 812 P.2d at 58.  The publisher also abuses the privilege by making "a defamatory statement knowing it to be false" or acting "in reckless disregard as to its falsity."  *Ferguson v. Williams & Hunt, Inc.*, 2009 UT 49, ¶ 28, 221 P.3d 205.

[366] ECF 198 at 27.

[367] ECF 211 at 27–34.

[368] 812 P.2d at 52.

tolerated."[369]  The Utah Supreme Court held these statements were conditionally privileged because "[k]nowledge that Nordstrom intended to enforce its policy against the use of narcotics was important information for those employees because of its deterrent effect both upon them and the employees they managed, especially in view of the fact that drug usage may have been widespread."[370]

Second, Plaintiffs cite *Agee v. Morton Thiokol, Inc.*[371]  In *Agee*, the plaintiff's former supervisor told the plaintiff's prospective employer that the plaintiff was terminated for "unacceptable work" and would "probably not be allowed back on the premises."[372]  The Tenth Circuit held this statement was privileged because the prospective employer "had a legitimate interest in learning the employment background of an individual being consider[ed] for an important oversight position."[373]  Additionally, the prospective employer was considering the plaintiff for a position that would require him to oversee his former employer.[374]  Both employers thus had an interest in discussing why the plaintiff was terminated so they could determine if he could be "an effective liaison."[375]

Finally, Plaintiffs cite *Mitan v. BRCSLC, Inc.*, which involved a letter that "warned potential business investors of fraudulent investment activities by" the plaintiff and his family.[376] A business broker posted an article about the fraud on his website and included a link to the

---

[369] *Id.*

[370] *Id.* at 59.

[371] 1992 WL 232473.

[372] *Id.* at *1.

[373] *Id.* at *2.

[374] *Id.* at *1.

[375] *Id.* at *2.

[376] No. 2:09-cv-363, 2010 WL 4024938, at *1 (D. Utah Oct. 13, 2010).

letter.[377]  The district court concluded the article was privileged because "[t]hose who view the website are likely interested in various business dealings" and "[t]he article warned of possible fraudulent business dealings."[378]  Accordingly, the business broker and website viewers both had "a legitimate interest in avoiding fraudulent investment schemes."[379]

*Brehany*, *Agee*, and *Mitan* share a common trait: a direct, nonspeculative connection between the alleged defamation and the asserted interest.  In *Brehany*, for example, there was a direct connection between a manager saying an employee was fired for drug use and the store's interest in deterring employee drug use.[380]  Likewise, in *Agee*, the employers' interest in hiring an effective liaison connected directly to the statements about why the employee was fired.[381]  And in *Mitan*, there was a direct connection between a broker sharing a letter about fraud and the interest in preventing fraud.[382]

Here, no similar connection exists.  Plaintiffs shared their Complaint and TRO Motion, which focus on Plaintiffs' legal claims, including those for false advertising, false association, patent infringement, copyright infringement, and defamation.[383]  The court is not persuaded that there is a direct connection between these legal claims and Plaintiffs' asserted interest in protecting the BRB industry and human lives.  Moreover, those asserted interests are speculative because they assume Defendants BRBs are deficient and will fail in such a way that destroys the BRB industry and results in death.  While the court is not concluding an asserted interest must be

---

[377] *Id.* at *1–2.

[378] *Id.* at *4.

[379] *Id.*

[380] 812 P.2d at 59.

[381] 1992 WL 232473, at *2.

[382] 2010 WL 4024938, at *4.

[383] ECF 63 at 9–19.

a certainty, it is not convinced that the privilege is meant to cover interests as attenuated and uncertain as Plaintiffs'.  Indeed, if Plaintiffs' asserted interests were sufficient to invoke the privilege, the court is concerned any plaintiff could use the same speculative reasoning to justify disseminating its complaint without limit.

In short, Plaintiffs have not shown their asserted interests are of the type that qualify for the legitimate interest privilege.  They are thus not entitled to summary judgment on this ground.

### 4.  Damages

Finally, Plaintiffs argue Defendants' defamation claim must fail because they do not have admissible evidence of damages and have not hired an expert to testify about damages.[384] Plaintiffs counter they are not required to show actual damages because their claim is for defamation per se.[385]  They also argue Hinchman's testimony will provide sufficient evidence of damages.[386]

"When words are defamatory per se, no showing of special damages is required because damages are implied."[387]  Defendants are thus not required to show actual damages for their defamation per se claim.  Plaintiffs tacitly concede this point in their Reply, but they argue the court "must summarily dismiss any claim to damages beyond nominal damages" because Defendants failed to timely disclose damages information.[388]  As explained in more detail below, the court concludes that although Defendants failed to meet Rule 26's disclosure requirements, the damages evidence should not be excluded.  Accordingly, Defendants are not entitled to summary judgment on this ground.

---

[384] ECF 198 at 28–29.

[385] ECF 211 at 34.

[386] *Id.*

[387] *Auto W., Inc. v. Baggs*, 678 P.2d 286, 290 (1983).

[388] ECF 227 at 22–23.

## B.  Deceptive Trade Practices

Defendants' second counterclaim is for deceptive trade practices under the Utah Truth in Advertising Act.[389]  They assert Plaintiffs disparaged their "goods, services, and/or business . . . by false and/or misleading representation of fact."[390]  Defendants identify the false or misleading representations of fact as the same statements from the Complaint and TRO Motion they argue are defamatory.[391]  Plaintiffs argue they are entitled to summary judgment because the statements are true.[392]

As explained above, a reasonable jury could conclude the statements are not true.[393] Accordingly, there is a genuine dispute of material fact concerning whether the statements are false or misleading, and Plaintiffs are thus not entitled to summary judgment on this claim.[394]

## C.  Intentional Interference with Economic Relations

Defendants' final counterclaim is for intentional interference with economic relations.[395] This claim is also based on the letters Plaintiffs sent to third parties regarding their lawsuit against Defendants.[396]  To succeed on this claim at trial, Defendants must show (1) Plaintiffs "intentionally interfered with [Defendants'] existing or potential economic relations, (2) . . . by improper means, (3) causing injury to [Defendants]."[397]  Plaintiffs argue they are entitled to

---

[389] ECF 70 ¶¶ 35–40.

[390] *Id.* ¶ 37; *see also* Utah Code § 13-11a-3(1)(h).

[391] *Id.* ¶¶ 37–38.

[392] ECF 198 at 29.

[393] *See supra* Section III.A.1.

[394] *See* ECF 229 at 23 ("The Opposition concedes that Defendants' deceptive trade practices counterclaim rises or falls with their defamation counterclaim.").

[395] ECF 70 ¶¶ 41–47.

[396] *Id.* ¶ 44.

[397] *See Eldridge*, 2015 UT 21, ¶ 70 (alteration in original) (quoting *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 304 (Utah 1982)).

summary judgment because Defendants cannot establish improper means or injury.[398]  For the reasons explained below, the court disagrees and concludes summary judgment on this claim is inappropriate.

### 1. Improper Means

"Improper means include violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood."[399]  As explained, there are genuine disputes of material fact regarding Defendants' defamation and deceptive trade practices claims.[400]  Because those claims could satisfy the improper means element, Plaintiffs have not shown they are entitled to summary judgment on this ground.

### 2. Injury

Defendants argue they were injured by the alleged defamation because Hinchman had to spend "upwards of forty (40) hours" convincing the recipients to keep SBC on a project.[401] Defendants further assert Hinchman is seeking $300 per hour, bringing the total damages to $12,000.[402]

Plaintiffs contend Defendants failed to timely disclose their damages computation and thus cannot show injury.[403]  After oral argument on Plaintiffs' Motion, the court ordered supplemental briefing on whether Defendants violated Federal Rule of Civil Procedure 26 by not

---

[398] ECF 198 at 31–32.

[399] *Overstock.com, Inc. v. SmartBargains, Inc.*, 2008 UT 55, ¶ 18, 192 P.3d 858 (quoting *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 201 (Utah 1991)).

[400] *See supra* Sections III.A & B.

[401] ECF 211 at 36; *see also Declaration of Andy Hinchman* (ECF 209-6) ¶ 6; *Defendants' Supplement Pursuant to Mar. 11, 2002 Court Order* (ECF 243) at 2.

[402] ECF 243 at 5 ("The defendants have been made aware that Mr. Hinchman is seeking $300/hr for mitigating the damages Plaintiffs attempted to inflict . . . and that the amount of time Mr. Hinchman spent earning back his client's trust to be forty hours.").

[403] ECF 198 at 32; *see also Plaintiffs' Supplemental Brief In Support of Their Motion for Summary Judgment on Defendants' Counterclaims* (ECF 246 Sealed Version) (ECF 244 Public Version); *Plaintiffs' Response to Defendants' Supplement Pursuant to Mar. 11, 2022 Court Order* (ECF 253).

timely disclosing their damages computation and if so, whether that failure was harmless under the *Woodworker*'s factors.[404]  In their supplemental briefing, the parties disagree on both points. As explained below, the court concludes Defendants violated Rule 26 but that the violation is harmless because it can be cured.

### i.    Rule 26

Rule 26(a) requires parties to disclose "a computation of each category of damages claimed."[405]  The disclosing party "must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered."[406]  And under Rule 26(e), a party must supplement or correct its Rule 26(a) disclosures upon learning they are incomplete or incorrect.[407]

In their initial disclosures, Defendants stated their "computation of each category of damages claimed" as "[r]eimbursement for all attorneys fees and costs in defending the case, interest on all sums awarded, and all such other further relief deemed just and proper."[408]  But it was not until their Opposition to Plaintiffs' Motion that Defendants explained their damages included forty hours Hinchman spent working with the letter recipients.[409]

Plaintiffs argue Defendants violated Rule 26 because they did not initially disclose their damages computation and failed to supplement their disclosures.[410]  The court agrees—

---

[404] ECF 242; *see also Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

[405] Fed. R. Civ. P. 26(a)(1)(A)(iii).

[406] *Id.*

[407] *Id.* R. 26(e)(1)(A).

[408] *Exhibit A to ECF 244-1: Defendants' Initial Disclosures* (ECF 244-1) at 3.

[409] *See* ECF 211 ¶ 49; *see also* ECF 243 at 6 (Defendants stating Plaintiffs "were made aware in the summary judgment proceedings of the forty hours that Mr. Hinchman spent earning back clients due to the actions of the Plaintiffs").

[410] ECF 246 at 7–8.

Defendants violated Rule 26 by waiting until summary judgment proceedings to provide a damages computation.

However, Defendants argue they "substantially complied" with Rule 26(a) because "Plaintiffs know the theory for the damages, the amount Hinchman charges per hour, and they have documentation that details the steps Hinchman took to restore client relationships."[411]  Even assuming that is true, Defendants waited until summary judgment to explain their damages were based on forty hours of work by Hinchman.[412]  Without that amount, the computation of damages was incomplete, and Defendants should have supplemented their disclosures.

### ii.    *Woodworker*'s Factors

"If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . unless the failure was substantially justified or is harmless."[413]  The Tenth Circuit has articulated four factors—the *Woodworker*'s factors—that courts use when evaluating whether a Rule 26 violation is justified or harmless.[414]  The factors are "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."[415]  Below, the court evaluates the factors and concludes they collectively weigh against exclusion.

---

[411] *Defendants' Reply Brief Pursuant to Mar. 11, 2022 Court Order* (ECF 250) at 3.

[412] *See id.* ("Defendants substantially complied with this requirement, but for disclosing the forty hours.").

[413] Fed. R. Civ. P. 37(c)(1).

[414] *See Woodworker's Supply*, 170 F.3d at 993.

[415] *Id.*

**Prejudice or surprise.** Plaintiffs argue this factor weighs in their favor because Defendants did not provide the computation until summary judgment and because Defendants repeatedly represented they were going to use an expert.[416]

Defendants assert there was no prejudice or surprise because Plaintiffs were "given ample opportunity to depose Mr. Hinchman regarding damages."[417]  In support, they cite *Gillum v. United States*, where the United States argued it was prejudiced by a Rule 26(a) violation because it could not adequately prepare for a deposition.[418]  The Tenth Circuit did "not contest that the United States's attorney was hampered in preparing for [the] deposition," but it concluded the violation was harmless because "any prejudice . . . was capable of being cured."[419]  Accordingly, *Gillum* does not support Defendants' argument because *Gillum*'s holding was based on the ability to cure, not a lack of prejudice.[420]

Furthermore, Hinchman's deposition testimony did not clarify Defendants' claimed damages.[421]  For example, when asked what costs he had incurred, he identified "lawyer fees," "travel business expenses, meals, loss of projected business revenue," and his "time."[422]  He also suggested an hourly rate of $300 because that is how much "professional witnesses" are paid.[423]  But he never stated he spent forty hours working to rectify relationships.[424]  Moreover, Hinchman identified $100,000 as his likely damages, but his counsel objected and clarified they

---

[416] ECF 246 at 9.

[417] ECF 243 at 4.

[418] 309 F. App'x 267, 269 (10th Cir. 2009) (unpublished).

[419] *Id.* at 270.

[420] *Id.*

[421] *Exhibit C to ECF 246: Andrew J. Hinchman Deposition* (ECF 246-1) at 169:7–170:12; 171:8–172:6.

[422] *Id.* at 169:7–170:9.

[423] *Id.* at 170:6–9 ("I know we paid those professional witnesses 300 bucks an hour.  So maybe I could go and log all – get all my hours for what I spent on this and times that by 300 bucks.").

[424] *See id.* at 169:7–172:24.

65

were going to "hire an expert" because Hinchman "isn't qualified . . . to speculate on some of the damages."[425]  And when Defendants' counsel later asked Hinchman what his "other damages" were, Hinchman identified $5 million in financial losses.[426]  So although Plaintiffs deposed Hinchman, his testimony was uncertain and did not establish the claimed damages.

In short, Plaintiffs were prejudiced because Defendants delayed disclosing their claimed damages until summary judgment proceedings.  For that reason, this factor weighs in Plaintiffs' favor.

**Curability.**  Plaintiffs argue the prejudice cannot be cured because fact discovery is closed, "deadlines to serve expert reports regarding damages have expired, and summary judgment motions have been filed and are currently pending."[427]  However, any prejudice can be cured by ordering Defendants to supplement their damages disclosure and allowing Plaintiffs to depose Hinchman about the claimed damages.

First, Defendants argue any disclosure inadequacies can be cured if the court orders them to supplement their disclosures.[428]  The court agrees—requiring Defendants to supplement their disclosures will help cure the inadequacies.

Second, in similar scenarios, courts have concluded prejudice can be cured by allowing the prejudiced party to depose the relevant witness.[429]  Defendants' damages computation is not complex (40 hours at a rate of $300 per hour) and is thus unlikely to require significant time and

---

[425] *Id.* at 171:15–25.

[426] *Id.* at 172:20–24.

[427] ECF 246 at 9.

[428] ECF 243 at 7.

[429] *See Woodworker's Supply*, 170 F.3d at 993 (holding "the district court gave [the prejudiced party] a significant opportunity to cure any resulting prejudice by cross-examining [the witness] outside the presence of the jury"); *Ngatuvai v. Lifetime Fitness*, No. 2:16-cv-39-JNP-DBP, 2020 WL 5441442, at *19 (D. Utah Sept. 10, 2020) (concluding "any possible prejudice" could be cured by allowing the prejudiced party to depose the relevant witnesses "about their supplemental disclosures").

resources to investigate.  And although Plaintiffs reference prejudice regarding their summary judgment motion,[430] that argument is too speculative to show incurable prejudice.  Accordingly, the court is persuaded that any prejudice to Plaintiffs can be cured by allowing Plaintiffs to depose Hinchman about the claimed damages.

For the stated reasons, this factor weighs against exclusion.

**Disruption.**  Defendants argue this factor weighs in their favor because a trial date has not been set.[431]  Plaintiffs contend this factor weighs in their favor because allowing additional discovery "will kick trial even further down the road for a case that has been pending since 2017."[432]  The court agrees with Defendants—where no trial date has been set, the court is unconvinced that allowing additional limited discovery would cause a significant enough delay to disrupt the trial.  This factor thus weighs against exclusion.

**Bad faith or willfulness.**  Plaintiffs concede there is no evidence of bad faith, but argue the untimely disclosure was willful because Defendants responded to their discovery requests and deposition questions with "uncertainty, evasiveness, and promises of expert testimony."[433]  Defendants counter their failure to supplement the disclosures was an "unintentional oversight."[434]  The court agrees with Plaintiffs.

The Tenth Circuit has "defined a willful failure as 'any intentional failure as distinguished from involuntary noncompliance.'"[435]  Defendants did not initially disclose their damages computation, nor have they supplemented their initial disclosures with the relevant

---

[430] *See* ECF 246 at 9.

[431] ECF 243 at 6–7.

[432] ECF 246 at 10.

[433] *Id.* at 10.

[434] ECF 243 at 7.

[435] *In re Standard Metals Corp.*, 817 F.2d 625, 628–29 (10th Cir. 1987) (quoting *Patterson v. C.I.T. Corp.*, 352 F.2d 333, 336 (10th Cir. 1965)) (discussing willfulness when a party disobeys a discovery order).

information.  Moreover, during Hinchman's deposition and in response to Plaintiffs' interrogatories, Defendants stated they planned to hire an expert.[436]  Defendants later decided against hiring an expert and did not file an expert report,[437] yet they still did not supplement their disclosures.  It was not until summary judgment proceedings that Defendants clarified they were seeking damages based on 40 hours of work by Hinchman at a rate of $300 per hour.

Defendants have not provided an adequate explanation for their failure to disclose their damages computation.  This is particularly true because the computation they eventually provided is not complex and consists solely of information that would have been available to them from the beginning.  And although Defendants claim this was an "unintentional oversight," the court concludes the repeated failures are sufficient to show intentional behavior and thus willfulness.

**Weighing the Factors.**  In sum, prejudice and willfulness weigh in favor of exclusion, but curability and disruption to trial weigh against exclusion.  The court concludes the latter two factors carry more weight in this case.  The question under Rule 37 is whether the failure was substantially justified or harmless.[438]  Because a trial date is not set and any harm can be cured by requiring Defendants to supplement their disclosures and allowing Plaintiffs to depose Hinchman, exclusion is not justified under Rule 37.[439]  And because the court declines to

---

[436] ECF 246-1 at 171:15–25; ECF 246-2 at 5 (Response to Interrogatory No. 24).

[437] *See* ECF 243 at 7.

[438] Fed. R. Civ. P. 37(c)(1).

[439] *See HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1205 (10th Cir. 2017) (stating "district courts should consider the efficacy of lesser sanctions, where the exclusion of evidence has the necessary force and effect of a dismissal").

exclude this evidence, Plaintiffs are not entitled to summary judgment based on Defendants' failure to timely disclose their damages computation.[440]

Furthermore, the court orders Defendants to supplement their damages disclosure within fourteen days of this order.  Plaintiffs may depose Hinchman about these supplemental disclosures.  And because Defendants' disclosure failures necessitated the additional discovery, the court orders that Defendants must pay the reasonable attorney fees and costs incurred by Plaintiffs in deposing Hinchman again.[441]

## CONCLUSION

Defendants' First Motion[442] is GRANTED.

Defendants' Second Motion[443] is GRANTED in part and DENIED in part.  Defendants are entitled to summary judgment on the following claims:

- Core-Brace's false advertising[444] and false association[445] claims;

- Core-Brace's UTAA claim,[446] insofar as it is based on subsections (b) and (c);

---

[440] At times, Defendants suggested their claimed damages included attorney fees.  *See* ECF 211 ¶ 48; ECF 246-1 at 169:7–10.  Plaintiffs argue these "are not permissible" damages because "damages in a tort action do not ordinarily include compensation for attorney fees or other expenses of litigation."  ECF 246 at 2 (quoting Restatement (Second) of Torts § 914 (1979)).  Defendants do not respond to this contention, but from their arguments, it seems apparent their claimed damages are limited to the forty hours Hinchman spent trying to rectify relationships and thus do not include attorney fees.  *See* ECF 211 at 36 ("The third parties finally acquiesced to using SBC's BRBs on the project after Hinchman spent upwards of forty (40) hours going back and forth with the third parties.").  Accordingly, the court need not address whether attorney fees are recoverable with respect to this claim.

[441] *See Ngatuvai*, 2020 WL 5441442, at *20 (ordering the party that failed to disclose to pay "reasonable attorney's fees and costs" associated with supplemental depositions and reports); *see also Gillum*, 309 F. App'x at 270 ("Further, to the extent that the second deposition was required because of the inadequate report, the court could order that [the party at fault] bear the costs of the second deposition.").

[442] ECF 161.

[443] ECF 195.

[444] ECF 63 ¶¶ 57–64.

[445] *Id.* ¶¶ 65–76.

[446] *Id.* ¶¶ 77–90.

- SME's unfair competition claim;[447] and

- Core-Brace's copyright infringement claim.[448]

Defendants are not entitled to summary judgment on the following claims:

- Core-Brace's UTAA claim,[449] insofar as it is based on subsections (e) and (g);

- Plaintiffs' intentional interference with economic relations claim;[450] and

- Plaintiffs' defamation claim.[451]

Plaintiffs' Motion[452] is DENIED.

SO ORDERED this 11th day of July 2023.

BY THE COURT:

_____

ROBERT J. SHELBY
United States Chief District Judge

---

[447] *Id.* ¶¶ 107–11.

[448] *Id.* ¶¶ 120–34.

[449] *Id.* ¶¶ 77–90.

[450] *Id.* ¶¶ 112–19.

[451] *Id.* ¶¶ 135–38.

[452] ECF 196; ECF 198.