IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SME STEEL CONTRACTORS, INC., a Utah corporation; and CORE-BRACE, LLC, a Utah limited liability company,<br><br>    Plaintiffs,<br><br>v.<br><br>SEISMIC BRACING COMPANY, LLC, a Utah limited liability company; and ANDREW J. HINCHMAN, an individual,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:17-cv-00702-RJS-DAO<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg |

Now before the court is Defendants Seismic Bracing Company, LLC (SBC) and Andrew Hinchman's Motion for Attorney's Fees.[1] Also before the court is Defendants' Bill of Costs.[2] Together, Defendants Motion and Bill of Costs seek an Order requiring Plaintiffs SME Steel Contractors, Inc. and Core-Brace, LLC to pay fees and costs totaling $169,372.93.[3] For the reasons explained below, the court DENIES the Motion and DENIES the Bill of Costs.

## BACKGROUND

The court assumes the parties' familiarity with the factual and procedural background of this long and complicated case and reviews here only those developments not recounted in its prior Orders.[4]

---

[1] ECF 278, *Defendants' Motion for Attorney Fees*.

[2] ECF 277, *Bill of Costs*.

[3] *See* ECF 277; ECF 278 at 1, 11–12; ECF 278-1, *Declaration of Scott D. Swanson* ¶ 19.

[4] For a more complete account of the case's background, see ECF 266, *Memorandum Decision and Order* at 3–13.

*Summary Judgment*

On July 11, 2023, the court issued a Memorandum Decision and Order resolving three Motions for Summary Judgment: (1) Defendants' Motion for Summary Judgment on Plaintiffs' patent infringement claim, (2) Defendants' Motion for Summary Judgment on Plaintiffs' claims for false advertising, false association, deceptive trade practices, unfair competition, intentional interference with economic relations, copyright infringement, and defamation, and (3) Plaintiffs' Motion for Summary Judgment on Defendants' counterclaims for defamation per se, deceptive trade practices, and intentional interference with economic relations.[5] Collectively, these Motions addressed all outstanding claims and counterclaims at issue in this case.

In the Order, the court first granted Defendants' Motion for Summary Judgment on Plaintiffs' patent infringement claim, finding Plaintiffs had not shown either literal infringement or infringement under the doctrine of equivalents.[6] Discussing infringement under the doctrine of equivalents, the court noted Plaintiffs had not sufficiently refuted Defendants' arguments regarding amendment-based estoppel and argument-based estoppel.[7]

The court then granted in part and denied in part Defendants' Motion for Summary Judgment on Plaintiffs' remaining claims. First, the court granted Defendants summary judgment on Plaintiffs' claims for false advertising and false association under 15 U.S.C. §§ 1125(a)(1)(B) and 1125(a)(1)(A), provisions of the Lanham Act.[8] The court based its decision on the conclusion Plaintiffs' lacked standing to bring the claims.[9] The court "[did] not address

---

[5] ECF 266 at 12–13.

[6] *Id.* at 14–23.

[7] *Id.* at 20–22.

[8] *Id.* at 23–30.

[9] *Id.* at 24.

the merits."[10]  Second, the court partially granted and partially denied summary judgment on Plaintiffs' deceptive trade practices claim under a section of the Utah Truth in Advertising Act (UTAA), Utah Code Ann. § 13-11a-3.[11]  Plaintiffs' claim alleged Defendants had engaged in four distinct forms of deceptive trade practices listed in § 13-11a-3:

- "(b) caus[ing] likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services";
- "(c) caus[ing] likelihood of confusion or of misunderstanding as to affiliation, connection, association with, or certification by another";
- "(e) represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have"; and
- "(g) represent[ing] that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or second-hand."[12]

After a lengthy discussion concluding several relevant factors weighed in each party's favor, the court granted Defendants summary judgment with respect to the liability theories rooted in Utah Code Ann. §§ 13-11a-3(b) and (c).[13]  By comparison, the court concluded "Defendants [did] not carr[y] their burden of showing Core-Brace [did] not have sufficient evidence to succeed at trial" with respect to subsections (e) and (g).[14]  The court denied Defendants summary judgment

---

[10] *Id.*

[11] *Id.* at 30–40.

[12] *See id* at 31–40.

[13] *Id.* at 32–40.

[14] *Id.* at 31–32.

3

insofar as Plaintiffs' claims were based on these subsections.[15] Third, the court granted Defendants summary judgment on Plaintiffs' claim for unfair competition under Utah Code Ann. § 13-5a-103.[16] The court based this decision on the parties' agreement that summary judgment was appropriate if the court also granted summary judgment in Defendants' favor on Plaintiffs' patent infringement claim.[17] Fourth, the court denied Defendants summary judgment on Plaintiff's claim for intentional interference with economic relations.[18] Evaluating the merits of the parties' arguments, the court concluded Defendants had not shown the non-existence of a genuine dispute of material fact concerning two essential elements of Plaintiffs' claim.[19] Fifth, the court granted Defendants summary judgment on Plaintiffs' copyright infringement claim.[20] Assuming infringement had occurred, the court reasoned "Core-Brace [had] not presented sufficient evidence of damages" with respect to the claim.[21] Sixth, the court denied Defendants summary judgment on Plaintiffs' defamation claim.[22] The court agreed with Plaintiffs that Defendants did not satisfy their burden to "present[] evidence . . . show[ing] the absence of a genuine issue of material fact."[23]

---

[15] *Id.*

[16] *Id.* at 40.

[17] *Id.*

[18] *Id.* at 40–42.

[19] *Id.*

[20] *Id.* at 42–46.

[21] *Id.* at 43.

[22] *Id.* at 46–48.

[23] *Id.* at 47.

4

Finally, the court denied Plaintiffs' Motion for Summary Judgment on each of Defendants' counterclaims for defamation per se, deceptive trade practices, and intentional interference with economic relations.[24]

*Supplemental Jurisdiction and Final Judgment*

Although the court's Order denied summary judgment on several issues—namely, Plaintiffs' UTAA claims under Utah Code Ann. §§ 3-11a-3(e) and (g), Plaintiffs' intentional interference with economic relations claim, Plaintiffs' defamation claim, and Defendants' three counterclaims—the Order resolved all claims arising under federal law. Thus, the court directed the parties to submit briefing on whether the court had jurisdiction to consider the unresolved claims.[25] The parties agreed the court lacked jurisdiction and the court dismissed the remaining claims and counterclaims without prejudice.[26]

The court also entered final judgment, granting judgment in Defendants' favor on each of Plaintiffs' claims and in Plaintiffs' favor on each of Defendants' counterclaims.[27]

**Motion for Attorney's Fees**

Defendants filed the present Motion and their Bill of Costs on September 12, 2023.[28] Plaintiffs filed their Response on October 27, 2023, opposing the Motion and objecting to the Bill of Costs.[29] Defendants filed a reply on November 11, 2023.[30] Together, Defendants'

---

[24] *Id.* at 48–69.

[25] *Id.* at 2.

[26] ECF 274, *Docket Text Order* ("The court declines to continue exercising supplemental jurisdiction over the remaining claims given the parties' agreement that there is no compelling reason for the court to continue exercising supplemental jurisdiction. Accordingly, the remaining claims are dismissed without prejudice for lack of subject matter jurisdiction.").

[27] ECF 275, *Judgment in a Civil Case* at 1–2.

[28] *See* ECF 277; ECF 278.

[29] ECF 290, *Plaintiffs' Consolidated Memorandum in Opposition to Defendants' Motion for Attorney Fees and Objection to Defendants' Bill of Costs*.

[30] ECF 295, *Reply in Support of Motion for Attorney Fees*.

Motion and Bill of Costs request $146,767.49 in attorney's fees,[31] $4,146.05 in taxable costs for obtaining printed or electronically recorded transcripts,[32] and $8,559.39 in non-taxable costs for attorney travel and expert reports.[33] Defendants also request an order requiring Plaintiffs to pay Defendants' expert, Don Barker, $9,900.00 "for time spent in responding to discovery" under Federal Rule of Civil Procedure 26.[34] Plaintiffs oppose the award of any attorney's fees or costs, except select expert witness fees under Rule 26.[35]

## LEGAL STANDARD

When considering a request for attorney's fees, the court applies the American Rule, in which "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise."[36] With respect to costs, Federal Rule of Civil Procedure 54(d)(1) provides that "costs—other than attorney's fees—should be allowed to the prevailing party."[37] However, this Rule applies only to taxable costs, the "relatively minor, incidental expenses" listed in 28 U.S.C. § 1920.[38] The court considers all other costs nontaxable, and the court may order a party to pay them to an opposing party only if another statute or an agreement provides for their award.[39]

Separately, Federal Rule of Civil Procedure 26(b)(4)(E)(i) provides that "[u]nless manifest injustice would result, the court must require" a party seeking expert discovery to pay

---

[31] ECF 278 at 1.

[32] ECF 277 at 1.

[33] ECF 278 at 1; ECF 278-1 ¶¶ 16–18.

[34] ECF 278 at 11–12; ECF 278-1 ¶ 19.

[35] ECF 290 at 7, 19–20.

[36] *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–253 (2010)); *see also Banner Bank v. Smith*, 30 F.4th 1232, 1237 (10th Cir. 2022).

[37] Fed. R. Civ. P. 54(d)(1).

[38] *Valdez v. Macdonald*, 66 F.4th 796, 837 (10th Cir. 2023).

[39] *See id.*

6

their opponent's expert "a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) . . . ."[40] Subsection (b)(4)(A) permits a party to depose an expert witness retained to present their opinions at trial.[41]

## ANALYSIS

The court first considers (I) whether Defendants are entitled to attorney's fees, (II) then whether Defendants are entitled to any taxable or nontaxable costs, and (III) lastly whether Plaintiffs must pay Barker any expert witness fees under Rule 26.

### I.     Attorney's Fees

Defendants cite four state and federal laws in wide-ranging support of their request for attorney's fees: (A) the UTAA, (B) the Copyright Act, (C) the Patent Act, and (D) the Lanham Act.[42] Plaintiffs respond that none of these laws permit the court to award attorney's fees.[43] Alternatively, Plaintiffs contend the court should deny Defendants' request to the extent it fails to allocate fees by individual claims and counterclaims.[44] The court concludes none of the laws Defendants cite permit an attorney's fees award and does not reach the issue of Defendants' failure to allocate expenses.

---

[40] Fed. R. Civ. P. 26(b)(4)(A).

[41] *Id.*

[42] ECF 278 at 8–11.

[43] ECF 290 at 7–15.

[44] *Id.* at 15–16.

### A.     UTAA

Defendants first argue they are entitled to an award of fees under the UTAA, which formed the basis of their deceptive trade practices claim.[45] Plaintiffs counter the UTAA does not entitle Defendants to attorney's fees because Defendants did not prevail on their UTAA claim.[46]

The relevant UTAA provision, Utah Code Ann. § 13-11A-4(c), requires the "[t]he court to "award attorneys' fees to the prevailing party."[47] However, "[t]he Utah Supreme Court has adopted a 'flexible,' 'reasoned,' and 'common-sense' approach to whether a litigant is a prevailing party" that involves a "case-by-case evaluation" of a party's success.[48] Thus, "it is possible that, in litigation where both parties obtain mixed results, neither party should be deemed to have prevailed for purposes of awarding attorney['s] fees."[49]

The court concludes it would be premature to declare Defendants have prevailed on Plaintiffs' UTAA claim because the court granted summary judgment in Defendants' favor on only some aspects of the claim. Plaintiffs' UTAA claim rested on four independent theories of liability and the court granted summary judgment in Defendants' favor on only those two theories arising under Utah Code Ann. §§ 13-11a-3(b) and (c). The court denied summary judgment on the theories raised under Utah Code Ann. §§ 13-11a-3(e) and (g), finding Defendants had not shown the nonexistence of a genuine issue of material fact such that Plaintiffs could still prevail on these theories at trial.[50] The outcome of Plaintiffs' claim, then, is

---

[45] ECF 278 at 8–9.

[46] ECF 290 at 14–15.

[47] Utah Code. Ann. § 13-11A-4(c).

[48] *Xlear, Inc. v. Focus Nutrition, LLC*, 893 F.3d 1227, 1239 (10th Cir. 2018) (quoting *Neff v. Neff*, 247 P.3d 380, 399–400 (Utah 2011)).

[49] *Neff*, 247 P.3d at 398 (internal quotation marks and footnotes omitted).

[50] ECF 266 at 32.

fairly characterized as a mixed result and the court concludes it is premature to declare either Defendants or Plaintiffs the prevailing party.

The court is not otherwise persuaded by Defendants' argument they "won overall on this cause of action *in this case*."[51] Although the court ultimately dismissed Plaintiffs' UTAA claim in its entirety, the court only entered judgment on the merits of the claim with respect to subsections (b) and (c). The court dismissed the portions of Plaintiffs' claim arising under subsections (e) and (g) without prejudice for lack of subject matter jurisdiction after the parties mutually agreed the court lacked jurisdiction to continue adjudicating the state claims.[52] Under these circumstances, the court concludes declaring Defendants the prevailing party would be inconsistent with the "flexible" and "reasoned" approach the Utah Supreme Court directs courts engaged in the prevailing party-inquiry to apply.

Because Defendants did not "prevail" on Plaintiffs' UTAA claim, the court concludes Defendants are not entitled to attorney's fees under the UTAA.

### B.     Copyright Act

Defendants next argue the court should award attorney's fees under the Copyright Act,[53] which formed the basis of their copyright infringement claim.[54] In brief review, Plaintiffs' copyright infringement claim requested injunctive relief and damages in connection with Defendants' alleged misuse of several technical drawings in a design manual they produced and circulated.[55] As with their UTAA claim, Plaintiffs contend Defendants are not entitled to

---

[51] ECF 278 at 3–4.

[52] Notably, Plaintiffs are continuing to pursue the portions of their claim arising under subsections (e) and (g) in state court. ECF 294, *Plaintiffs' Notice of Supplemental Authority Regarding Their Consolidated Memorandum in Opposition to Defendants' Motion for Attorney Fees and Objection to Defendants' Bill of Costs* at 2.

[53] *See* 17 U.S.C. §§ 101–1511.

[54] ECF 278 at 9–10.

[55] *See, e.g.*, ECF 63, *First Amended Complaint* ¶¶ 103–17.

attorney's fees under the Copyright Act because Defendants did not "prevail" on the copyright infringement claim.[56]

Section 505 of the Copyright Act permits a court to award attorney's fees to a "prevailing party,"[57] that is, someone "who has been awarded some relief by the court, like an enforceable judgment on the merits or a court-ordered consent decree."[58] Beyond this provision, however, there is no "precise rule or formula" for a court's decision to award fees under the Copyright Act.[59] Rather, the Supreme Court instructs trial courts to engage in a "particularized, case-by-case assessment" of whether an attorney's fees award is appropriate.[60]

The court does not engage in this particularized assessment here because it concludes Defendants did not sufficiently prevail on Plaintiffs' copyright infringement claim to permit an attorney's fees award. Evaluating Plaintiffs' copyright infringement claim at summary judgment, the court concluded Plaintiffs lacked sufficient evidence of damages to support their claim and entered judgment in Defendants' favor.[61] Earlier in the case, however, Plaintiffs succeeded on an aspect of their claim when they moved the court to issue a Temporary Restraining Order prohibiting Defendants from, among other things, using Plaintiffs' technical drawings in their design manual.[62] Although the court ultimately declined to issue Plaintiffs' requested relief,[63]

---

[56] ECF 290 at 12–14.

[57] 17 U.S.C. § 505.

[58] *Contagious, LLC v. Bella B, Inc.*, No. 2:18-cv-00502, 2019 WL 11632210, at *2 (D. Utah Mar. 5, 2019) (quoting *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health & Hum. Res.*, 532 U.S. 598, 603–04 (2001)).

[59] *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533–34 (1994)).

[60] *Id.* In *Fogerty*, the Supreme Court articulated a of non-exhaustive list of factors to guide a court's case-by-case assessment, "frivolousness, motivation, objective unreasonableness[,] and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.*

[61] ECF 266 at 42–46.

[62] *See* ECF 18, *Plaintiff Core-Brace, LLC's Renewed Consolidated Motion for Temporary Restraining Order at Preliminary Injunction* at 40.

[63] *See* ECF 46, *Order*.

Plaintiffs' Motion prompted Defendants to acknowledge their use of the drawings and remove them from the design manual.[64]  Plaintiffs' Motion also prompted Defendants to agree to a stipulation prohibiting their future use of the drawings.[65]

Defendants argue the stipulation does not evidence Plaintiffs' success because their agreement constituted a "voluntary change" in conduct.[66]  However, the stipulation's character is not so simple.  The court ordered the parties to submit the stipulation for court approval after discussing its terms at a hearing on Plaintiffs' request for a Temporary Restraining Order,[67] the parties did so,[68] and the court issued an Order giving the stipulation legal effect.[69]  Thus, the stipulation is distinguishable as a "judicially sanctioned change in the parties' legal relationship."[70]

Weighing the parties' shared success, the court concludes it may not label Defendants the prevailing party.  Thus, Defendants are not eligible for an attorney's fees award under the Copyright Act.

### C.     Patent Act

Defendants also argue they are entitled to an award of attorney's fees under the Patent Act,[71] which formed the basis of Plaintiffs' patent infringement claim.[72]  A provision of the Patent Act, 33 U.S.C. § 285, permits the court to award attorney's fees to the "prevailing party"

---

[64] ECF 27, *Declaration of Andrew Hinchman* ¶¶ 37–38.

[65] *See* ECF 34, *Minute Entry*; *see also* ECF 41, *Official Transcript of July 25, 2017 Hearing on Motion for Temporary Restraining Order* at 191–93.

[66] ECF 295 at 3 (quoting *Buckhannon Bd. & Care Home, Inc.*, 532 U.S. at 601).

[67] *See* ECF 41 at 193.

[68] *See* ECF 36, *Joint Motion for Entry of Stipulation*.

[69] *See* ECF 38, *Stipulation*.

[70] *Buckhannon Bd. & Care Home, Inc.*, 532 U.S. at 605.

[71] 33 U.S.C. §§ 1–390.

[72] ECF 278 at 10–11.

only in "exceptional cases."[73] An exceptional case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated," and a district court "may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances."[74] Simply "losing in patent litigation is not exceptional."[75]

Because the parties do not dispute Defendants prevailed on Plaintiffs' patent infringement claim,[76] the court moves directly to the question of whether this case is exceptional. Defendants raise three arguments in support of their position:

- Plaintiffs presented a limited opposition to Defendants' Motion for Summary Judgment on Plaintiffs' patent infringement claim;

- Plaintiffs did not conduct any "due diligence investigation into Defendants' products, or any analysis of the asserted patent and its prosecution history" before bringing this case; and

- Plaintiffs sent several letters making "vague, ambiguous allegations of patent infringement" to "Defendants' business contacts."[77]

The court is unpersuaded these arguments, "coupled with the remaining conduct of Plaintiffs throughout this litigation, make[] this case stand out from a normal case."[78] Responding to Defendants' first argument, Plaintiffs reasonably justify their limited opposition to Defendants'

---

[73] 33 U.S.C. § 285.

[74] *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).

[75] *Cook v. Hass Outdoors, Inc.*, No. 2:10-cv-00005-DN, 2017 WL 6028521, at *2 (D. Utah Dec. 5, 2017) (unpublished).

[76] *See* ECF 290 at 9–10.

[77] ECF 278 at 10–11.

[78] *Id.*

Motion for Summary Judgment as a pragmatic decision to focus on the arguments they thought most likely to succeed over those they believed less likely to succeed.[79] Plaintiffs do not specifically respond to Defendants' second and third arguments, but they broadly assert their patent infringement claim was "based on a reasonable belief that Defendants were infringing their patent rights."[80] The court finds this response offers a sensible explanation for Plaintiffs' actions. Having presided over this case for more than seven years,[81] the court believes this case is more properly characterized by nuanced legal issues and adaptive strategy than illegitimate and oppressive litigation.[82] Although Plaintiffs lost their patent infringement claim on summary judgment, following adverse claim construction rulings, they did not put forth an obviously deficient claim,[83] or "engage in vexatious litigation tactics, discovery abuses, violations of court orders, or sanctionable conduct."[84]

Because the court concludes, considering the totality of the circumstances, that this case is an "unexceptional and routine" instance of patent litigation, the court further concludes the Patent Act does not permit an attorney's fees award.[85]

---

[79] ECF 290 at 9–10.

[80] *Id.* at 9.

[81] *See Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 564 (2014) (explaining an appellate court should apply an abuse-of-discretion standard in reviewing a district court's determination of whether a patent case is exceptional "because it lives with the case over a prolonged period of time").

[82] Defendants' Motion begins with a lengthy, though incomplete, fact section describing Plaintiffs' conduct and, from this conduct, drawing the conclusion Plaintiffs initiated the present case knowing their claims were meritless and oppressive while seeking to shut down Defendants' young business. ECF 278 at 1–8. However, Defendants do not specifically draw on facts other than those discussed above in arguing their claim to attorney's fees under the Patent Act. *Id.* at 10–11. Moreover, the court is unconvinced Defendants' account of Plaintiffs' litigation goals demonstrates this case is exceptional. Defendants present no direct evidence of Plaintiffs' intent, Plaintiffs' directly dispute Defendants' assertions concerning their intent, and Defendants' argument is generally incongruent with the long and complicated history of this case.

[83] *See generally* ECF 266.

[84] *Highmark Inc.*, 572 U.S. at 564.

[85] Even assuming this case is exceptional, Defendants' Motion does not offer any argument as to why the court should exercise its discretionary powers and award Defendants attorney's fees under the Patent Act. *See id.* For example, Defendants do not describe whether an attorney's fees award would have a valuable deterrent effect.

### D.     Lanham Act

Finally, Defendants argue they are entitled to attorney's fees under the Lanham Act,[86] which formed the basis of Plaintiffs' false advertising and false association claims.[87] The Lanham Act contains an attorney's fees provision that is identical to the Patent Act's attorney's fees provision, and the Tenth Circuit applies the same standard under both provisions.[88]

As with Plaintiffs' patent infringement claim, the court concludes Plaintiffs' Lanham Act claims do not permit the court to award Defendants attorney's fees because neither the weakness of Plaintiffs' false advertising and false association claims nor Plaintiffs' litigation conduct render this case exceptional. On this point, Defendants generally characterize Plaintiffs' case as an attempt to burden Defendants' business activities and maintain an industry monopoly.[89] But, as described in the preceding section, the history and complexity of this case belie the notion Plaintiffs engaged in meritless and oppressive litigation.[90] More specifically, Defendants assert the following as evidence of Plaintiffs' improper motive and strategy:

- "Plaintiffs did not conduct any third[-]party discovery to determine if any of the alleged falsities in the Design Manual had affected anyone[]";
- "Plaintiffs . . . misled the [c]ourt to insinuate the Defendants, or the [c]ourt itself, was responsible for" their failure to conduct third-party discovery;
- "Plaintiffs failed to obtain any evidence in almost five years that would support any falsity, harm done to Plaintiffs, or inaccuracy of any evidence."[91]

---

[86] 15 U.S.C. §§ 1051–1141n.

[87] ECF 270 at 11.

[88] *Derma Pen, LLC v. 4EverYoung Ltd.*, 999 F.3d 1240, 1245–46 (10th Cir. 2021); 15 U.S.C. § 1117.

[89] ECF 278 at 11.

[90] *See supra* at 13 n.84.

[91] ECF 278 at 11.

The court is again unpersuaded because Defendants do not identify the factual basis of their statements. In any case, Plaintiffs adequately respond they "believed that [they] had sufficient evidence" and "did the best [they] could to work within the confines the [c]ourt's limitations on third-party discovery related to damages to prove its claims."[92]

Balancing Defendants' arguments against the pattern of overall reasonableness the court observed throughout Plaintiffs' pursuit of their Lanham Act claims, the court again concludes this case is not exceptional. Consequently, the Lanham Act does not permit an attorney's fees award.[93]

## II.   Taxable and Nontaxable Costs

Defendants seek $4,146.05 in taxable costs and $8,559.34 in nontaxable costs.[94] As stated below, the court concludes Defendants are not entitled to an award of any (A) taxable or (B) nontaxable costs.

### A.   Taxable Costs

Defendants seek $4,146.05 in taxable costs representing "[f]ees for printed or electronically recorded transcripts necessarily obtained for us in the case."[95] Plaintiffs respond that Defendants are not entitled to these costs because they did not "prevail" overall in this litigation.[96]

---

[92] ECF 290 at 11.

[93] Once again, even assuming this case is exceptional, Defendants' Motion does not offer any argument as to why the court should exercise its discretionary powers and award Defendants attorney's fees under the Lanham Act. *See* ECF 278 at 11.

[94] *See* ECF 277 at 1; ECF 278 at 1; ECF 278-1 ¶¶ 16–18.

[95] ECF 277 at 1.

[96] ECF 290 at 17–19.

As outlined at the outset of this discussion, Federal Rule of Civil Procedure 54(d)(1) provides "costs—other than attorney's fees—should be allowed to the prevailing party."[97] However, the court has discretion to deny costs "in cases in which 'neither side entirely prevailed, or when both prevailed, or when the litigation was thought to be the result of fault on the part of both parties.'"[98]

Considering the mixed results of this litigation (which is ongoing in state court), the court concludes Defendants did not prevail to such an extent they are entitled to an award of taxable costs under Rule 54.  Although the court entered final judgment in this case dismissing each of Plaintiffs' claims, the court declined to grant summary judgment in Defendants' favor on several of those claims: Plaintiffs' deceptive trade practices claim, insofar as it was based on Utah Code Ann. §§ 13-11a-3(e) and (g), Plaintiffs' intentional interference with economic relations claim, and Plaintiffs' defamation claim.  Instead, the court dismissed these claims without prejudice for lack of subject matter jurisdiction.  And although the court dismissed Plaintiffs' remaining claims—deceptive trade practices under Utah Code Ann. §§ 13-11a-3(b) and (c), copyright infringement, patent infringement, unfair competition, false advertising, and false association—with prejudice, Plaintiffs' pursuit of these claims was not without some degree of success.  Specifically, Plaintiffs' pursuit of their copyright infringement claim resulted in a stipulated court order benefiting Plaintiffs.  Moreover, the court entered final judgment on Defendants' counterclaims in Plaintiffs' favor, albeit without prejudice for lack of subject matter jurisdiction.

Where, as here, "Plaintiffs prevailed in obtaining some relief, Defendants prevailed in obtaining some relief, and the remaining claims are still undecided," the court concludes

---

[97] Fed. R. Civ. P. 54(d)(1).

[98] *See Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1234–35 (10th Cir. 2001) (quoting *Amarel v. Connell*, 102 F.3d 1494, 1523 (9th Cir. 1996)).

16

Defendants are not the prevailing party for the purpose of Federal Rule of Civil Procedure 54 and denies Defendants' request for taxable costs.[99]

### B. Nontaxable Costs

Defendants seek $8,559.34 in nontaxable costs associated with defense counsel's travel[100] and expert reports prepared by their expert witness.[101] Defendants generally assert they are entitled to these costs under the same statutes that entitle them to attorney's fees,[102] and suggest the court should grant these costs "as [a]ttorneys' fees."[103] In response, Plaintiffs argue Defendants do not establish the statutes at issue "support an award of non-taxable costs in the first instance," and alternatively, that an award of costs under any of the statutes is inappropriate absent a concurrent award of attorney's fees.[104]

The court need not determine whether the cited provisions of the UTAA, Copyright Act, Patent Act, or Lanham Act support an award of nontaxable costs because, as stated in the proceeding section, the court concludes Defendants are not entitled to an award of attorney's fees under any of the applicable statutes. Even assuming one of the statutes entitled Defendants to an award of nontaxable costs, the court declines to award those costs for the same reasons it declines to award attorney's fees.

### III. Expert Witness Fees

Finally, Defendants argue the court should issue an order under Federal Rule of Civil Procedure 26 requiring Plaintiffs to pay Barker for both the time he spent attending his

---

[99] ECF 290 at 18.

[100] ECF 278-1 ¶ 16 (invoiced list of travel-related costs totaling $4,684.39).

[101] *Id.* ¶ 18 (affirming Defendants paid Barker $3,875.00 for "expert reports for his expert declarations").

[102] *See* ECF 266 at 8–11.

[103] ECF 295 at 10.

[104] ECF 290 at 16–17.

17

depositions and the time he spent preparing to be deposed.[105] As reflected in the invoice Barker sent Plaintiffs, the total value of this time is $9,900.00.[106] Plaintiffs agree they must pay Barker for the time they spent deposing him, but argue they have no obligation to pay him for any additional time.[107]

District courts in the Tenth Circuit are divided on the question of whether Federal Rule of Civil Procedure 26(b)(4)(E) requires a party to pay their opponent's expert witness for time the witness spent preparing to be deposed.[108] But in any case, courts do not award expert fees for preparation time as a matter of course.[109] Applying Rule 26's plain language, courts require a party seeking preparation-related fees on behalf of their expert to show the fees are (1) "reasonable" and (2) incurred for "time spent in responding to discovery."[110] With respect to the first inquiry, courts "are reluctant to shift fees when the ratio of preparation time to deposition time is three-to-one or greater."[111] And with respect to the second inquiry, courts distinguish "time spent in responding to discovery" from "tasks more properly characterized as trial preparation or work related to the initial expert report" required under Federal Rule of Civil Procedure 26(b)(2)(B).[112]

Defendants' request for an order requiring Plaintiffs to pay Barker for his preparation time fails both of these inquiries. Addressing the reasonableness question, Defendants argue

---

[105] ECF 278 at 1, 11–12; ECF 278-1 ¶ 19.

[106] ECF 278-1 ¶ 19; ECF 278-9, *Don Barker Invoice for Expert Witnes[s]/Deposition Fees* at 2.

[107] ECF 290 at 19–20.

[108] *See Cricut, Inc. v. Enough for Everyone, Inc.*, No. 2:21-cv-00601, 2024 WL 1585600, at *2–3 (D. Utah Apr. 11, 2024).

[109] *See id.*

[110] *Id.*

[111] *Id*. at 2.

[112] *Id.* at 3.

Barker's depositions "took a substantial amount of time and preparation," and note Barker's hourly rate of $250.00 was $120.00 per hour less than the hourly rate Plaintiffs' expert witness charged.[113] But Defendants do not engage in any comprehensive discussion of the nature or necessity of Barker's preparation activities. For example, Defendants do clearly distinguish the amount of time Barker spent preparing to be deposed from the amount of time he spent actually being deposed, and do not weigh these values against each other. Likewise, Defendants make no effort to identify the time Barker billed as "time spent responding to discovery." Barker's invoice is attached to Defendants' Motion, but Defendants "neglect[] to discuss any of the items on [the] invoice,"[114] including questionable items such as time billed for travel and creation of a "supplemental report."[115] "While there is little doubt that at least some of [Barker's] time was spent responding to discovery, it is incumbent on [Defendants] to explain and discuss this in the first instance."[116]

Consequently, the court denies Defendants' request for an order requiring Plaintiffs to pay Barker $9,900.00. Plaintiffs must pay Barker for the time he spent attending their deposition, but the value of this time is not clear from Barker's invoice.[117]

---

[113] ECF 278 at 11–12.

[114] *Cricut, Inc.*, 2024 WL 1585600, at *3.

[115] *See* ECF 278-9.

[116] *Cricut, Inc.*, 2024 WL 1585600, at *3.

[117] Barker's invoice includes two entries related to active deposition time, a 7-hour entry on April 29, 2021 for "Time and Travel for Deposition" and an 8.5-hour entry on July 26, 2021 for "Time and Travel for Deposition and Preparation." ECF 278-9. Because the exact amount of time Plaintiffs spent actively deposing Barker is not clear from these entries, or the parties' briefing, the court does not presently order Plaintiffs to pay Barker a specific dollar amount.

## CONCLUSION

For the foregoing reasons, the court DENIES Defendants' Motion[118] and DENIES Defendants' requested Bill of Costs.[119]

SO ORDERED this 22nd day of July 2024.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[118] ECF 278.

[119] ECF 277.